(79 South. 125)

## ALABAMA GREAT SOUTHERN R. CO. v. SNODGRASS. (6 Div. 683.)

(Supreme Court of Alabama. April 11, 1918.)

1. RAILROADS ☞359(2)—INJURIES ON TRACK —ACT NOT A TRESPASS.

A child walking in a path which had been in frequent use by the public for a number of years, directly across a track in a railroad's switching yards in a city, doing so in order to reach coke ovens to procure some coke, was not a trespasser.

2. NEGLIGENCE ☞85(3)—CONTRIBUTORY NEGLIGENCE OF CHILD.

A child of the tender age of six was not chargeable with contributory negligence.

3. RAILROADS ☞398(2)—INJURIES ON TRACK —EVIDENCE.

In an action against a railroad for injuries to a six year old child on its switching track, evidence held to justify the inference that the place at which the child was struck was such as made it the duty of the railroad's agents to keep a lookout, and that, whether the train crew of the railroad engaged in switching at the time of the injury actually knew of frequent travel on the path the child was using, the use had been so long continued and common as to charge them with notice.

4. TRIAL ☞260(1) — INSTRUCTIONS—REPETITION.

Requested charges the substance of which was embraced in given charges were properly refused.

5. TRIAL ☞252(9)—ABSTRACT INSTRUCTION.

In an action against a railroad for injuries to a child crossing its switching track by a public path, a charge as to the railroad's ring-

[2] 200 Ala. 358.     [3] 199 Ala. 87.

ing the bell on the locomotive was properly refused as abstract, where the railroad's evidence that the bell was rung was not disputed, so that there was no issue on the point.

**6. RAILROADS ⊙══394(1)—INJURIES ON TRACK —COMPLAINT.**

In actions against railroads for injuries on the track, it is permissible under the Alabama system of pleading to charge negligence in the complaint in very general terms.

**7. RAILROADS ⊙══367—INJURIES AT CROSSING —NEGLIGENCE.**

If a railroad's cars were pushed onto its track, crossed by a public path, without proper lookout on the part of some one engaged in the switching, negligence in relation to a child on the crossing could be predicated on the act as much as though the cars were cut loose or kicked upon the track.

**8. RAILROADS ⊙══397(1)—INJURIES ON TRACK —EVIDENCE.**

In an action against a railroad for injuries to a child struck at the crossing of a switch track and a public path, questions to a witness referring to the crossing of the path over the main line of the railroad were proper as placing more properly the location of the place at which the accident occurred.

**9. RAILROADS ⊙══397(4)—INJURIES ON TRACK —EVIDENCE.**

In such action it was not error prejudicial to the railroad to permit a witness to testify that people lived beyond adjacent coke furnaces, and that there were camps for furnace employés in that direction, all beyond the switching yards, but toward which the path led.

**10. APPEAL AND ERROR ⊙══1005(3) — REVERSAL—DENIAL OF NEW TRIAL.**

Where the evidence of witnesses was in conflict, the Supreme Court will not predicate reversal on the trial court's action in overruling motion for new trial.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Suit by Jesse Snodgrass, pro ami, against the Alabama Great Southern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Jesse Snodgrass brings this suit by his next friend for recovery of damages alleged to have been sustained by being struck by a car which it is alleged the defendant negligently caused to run against the plaintiff, resulting in his injury.

The cause was tried upon count 1 of the complaint and the general issue. The submission of the cause to the jury resulted in a verdict for the plaintiff in the sum of $1,800, from which defendant prosecutes this appeal. Count 1 of the complaint reads as follows:

"Plaintiff, Jesse Snodgrass, who sues by next friend, Bill Snodgrass, claims of defendant $20,000, damages for that heretofore on, to wit, December 22, 1916, the defendant was engaged in a general railroad business and operating railroad trains propelled by steam locomotives on a railroad in the city of Bessemer, a thickly populated municipal corporation in Jefferson county, Ala.

"And the plaintiff says that while he was then and there walking straight across defendant's railroad track without loitering or lingering thereon, at a point where the public, including a large number of people then and there customarily and frequently walked across said track, the defendant's agent or servant, whose name to the plaintiff is unknown, in charge of one of said trains, and while acting within the line and scope of his employment, negligently caused a railroad car then and there to run violently against the plaintiff, and as a proximate result of said negligence the plaintiff received the following personal injuries and damage, to wit: He was cut, mashed, and bruised about the head and side, his arm was crushed and mashed and cut off close up to his body, and he was otherwise more or less bruised and contused about the body and limbs, and has been thereby caused to suffer great physical pain and mental anguish, and was made sick and sore, and has been greatly and permanently disfigured, and has been rendered permanently less able to work and earn money.

"And the plaintiff says that he was then and there, at the time of his said injuries, a minor of young and tender years, to wit, six years of age."

The evidence for the plaintiff tends to show that the defendant company was engaged in switching cars on to what is referred to as track No. 4, between the hours of 1 and 2 o'clock on the afternoon of December 22, 1916, in the switching yards located in the city of Bessemer; that the plaintiff, a child six years of age, was at the time he was struck in the act of crossing said track No. 4 in a path about two feet wide, which extended from the end of Twenty-Fifth street across two other tracks, and across a dirt road, and then across the said track No. 4 in the direction of the furnaces and coke ovens, which are beyond and west of the switching yards; that as the plaintiff was about to cross this track the defendant's engine which was engaged in switching cars at the time "kicked" four or five cars on said track No. 4, with no one on these cars to keep a lookout, and that these cars were "turned loose" by the engine and ran across this path, thereby injuring the plaintiff; said cars then ran into some cars which were standing on the other side of, and north of the path; that the engine was headed south, which was the opposite direction from which the cars were being "kicked"; that the cars were "kicked" some distance, and the plaintiff was hurt or run over on the first track, and on the first rail thereof. Plaintiff offered evidence to show that the path on which he was traveling at the time was one which had been traveled by the public for a number of years, and had been in use by a great many people for as much as ten years. One of the witnesses for the plaintiff testified that, in his judgment, 300 or 400 people crossed the path daily just where the boy was crossing at the time he was struck. The evidence further tended to show that beyond the switching yards, in the direction which plaintiff was traveling, there were furnaces and coke ovens, and also some few houses; that the path was used by a great many people working in those industries, but that a greater part of the travel is in the morning and evening, there not being as much crossing at that place about 2 o'clock in the afternoon as there would be in the morning and evening. The evidence further tends to show that plaintiff's brother was going over to the coke ovens to pick up coke, and that

plaintiff was accompanying him, but several feet in the rear.

The evidence for the defendant tends to show that no cars were "kicked" on said track No. 4 on the afternoon of December 22, 1916, but that two cars were shoved or pushed on said track by the engine which was headed north, and not south; that there were already a number of cars on the track when these two cars were pushed on said track No. 4, which by the impact said cars moved only a short distance, and that there were already cars on the said track No. 4 south of the place where the plaintiff was struck; that these cars were pushed on said track about 2 o'clock in the afternoon. One witness for the defendant indicated it was between 1 and 2 o'clock, and none of the crew knew of the accident until something like an hour or two afterwards when they heard of the same. The evidence for the defendant further tended to show that at the time the two cars were pushed on track No. 4 a proper lookout was being kept. The evidence for the defendant also tends to show that they knew nothing about any path being frequently traveled at this point, and further that there was no such frequent use of such path. However, witness Brown for defendant on cross-examination indicated there was such use made of the yards by the public, and said, "People cross there at all times; it is a very common thing." The witness further indicated that "all up and down the yards" was used by people as a "very common thing" and "all the time." Witness Bryan for defendant also testified that he sees a "good many people walking around in the yard going to the furnaces," but has seen no "great amount of people" cross this particular point. Defendant offered evidence to show that the brother of the plaintiff, who was a witness in the cause, had stated, and plaintiff had stated, that plaintiff was in the act of crawling under the car at the time he was injured.

Among other charges given for the defendant were charges D, G, H, and I, which are here set out:

"(D) If you believe from all the evidence in this case that plaintiff was crawling under the car of the defendant at the time he was injured, then you must find a verdict for the defendant."

"(G) The court charges you that, if you are reasonably satisfied from all the evidence in this case that the place where the plaintiff was injured was a railroad yard, and that there was no street or path across the same at the place of the injury, and if you are also reasonably satisfied from the evidence that at and near the place where plaintiff was injured the public were not accustomed to cross said track upon which he was injured in large numbers, such as to put the agents or servants of the defendant upon notice that there was likely to be or probably would be some person crossing said track, then you must find a verdict for the defendant.

"(H) The court charges you, gentlemen of the jury, that a railroad company has a right to kick its cars in its yards and on the tracks which it has a right to use, and unless you are reasonably satisfied from the evidence that cars were kicked without reasonable precautions over the place which the public was accustomed to use frequently, then, if injury occurred, the railroad company would not be responsible for the same.

"(I) If you believe all the evidence in this case, there was no duty on the part of defendant's agents or servants to look under the cars standing on Birmingham Southern track No. 4, before pushing said cars ahead on said track, if you believe from the evidence they pushed said cars ahead."

A. G. & E. D. Smith, of Birmingham, for appellant. Goodwyn & Ross, of Bessemer, for appellee.

GARDNER, J. [1] The evidence for the plaintiff tended to show that he was accompanying his brother to the coke ovens to procure some coke, and was walking in a path which had been in frequent use by the public for a number of years, directly across track No. 4, in the switching yards used by defendant in the city of Bessemer, Ala., when he was struck by a car just as he was on the first rail of track No. 4. The plaintiff thus in the act of crossing the track on such a mission, and under such circumstances was clearly not a trespasser. Lloyd v. Cent. of Ga. R. R. Co., 77 South. 237;[1] T., C. & I. R. R. Co. v. Hansford, 125 Ala. 349, 28 South. 45, 82 Am. St. Rep. 241; A. G. S. R. R. Co. v. Linn, 103 Ala. 134, 15 South. 508.

[2] Plaintiff was a child of six years of age, and therefore was not chargeable with contributory negligence. Sou. Ry. Co. v. Shipp, 169 Ala. 327, 53 South. 150.

We have therefore a case where the plaintiff was in the exercise of a lawful right when the injury was received, and of such tender years as not to be chargeable with contributory negligence.

The question of prime importance on this appeal is whether or not the defendant owed the plaintiff any duty of lookout. If the theory of the plaintiff is to be accepted, the path in which he was walking at the time across track No. 4 of the switching yards in the city of Bessemer had been used by the public for a number of years, as appears from a synopsis of the evidence found in the statement of the case, and there was also evidence indicating a rather general use by the public of the switching yards.

Speaking of this question, this court, in Duncan v. St. L. & S. F. R. R. Co., 152 Ala. 118, 44 South. 418, said:

"While the track of a railroad cannot be converted into a road for ordinary travel, and the mere usage or custom of crossing the track at any particular point does not give rise to the duty to keep a lookout, yet, as said in Savannah & Western R. R. Co. v. Meadors, 95 Ala. 137, 140, 143, 10 South. 142: 'When a railroad track runs through parts of a city, town, or village, which are thickly populated, and where the demands of trade and public intercourse necessitates the frequent crossing of the track, it is the duty of those operating an engine along the track in such places to keep a lookout. This duty to keep a lookout for persons is not specially imposed by statute, but arises from the likelihood that in such places there are persons on the track, and the bounden duty to duly guard against inflicting death or injury in places and under circumstances where it is

[1] 200 Ala. 694.

likely that injury may result unless care be observed. The duty arises when the circumstances exist which call for its exercise * * * and when they are known to those operating the train.'"

In the case of A. G. S. R. R. Co. v. Arnold, 84 Ala. 169, 4 South. 359, 5 Am. St. Rep. 354, is the following expression which has found frequent quotation in subsequent cases:

"Precautionary requirements increase in the ratio that danger becomes more threatening."

See, also, L. & N. R. R. Co. v. Webb, 97 Ala. 308, 12 South. 374; Savannah & Western R. R. Co. v. Meadors, 95 Ala. 137, 10 South. 141; Glass v. Memphis & C. R. R. Co., 94 Ala. 581, 10 South. 215; Sou. Ry. Co. v. Stewart, 179 Ala. 304, 60 South. 927; Birmingham Sou. R. R. Co. v. Fox, 167 Ala. 281, 52 South. 889.

In Sou. Ry. Co. v. Shipp, supra, the following expressions are pertinent:

"The path they were traveling at the time was one commonly used by the public, and seems to have been known as such to the agents or train crew of defendant, or at least the use was so common, long continued, and frequent as to charge them with notice. * * * The court properly allowed proof of the fact that people frequently and constantly crossed the track of the railroad at a point where plaintiff and his child were crossing at the time of the injury. While such a custom of the public to use such path as a crossing of defendant's track might not give the public or plaintiff any absolute right to cross the track, * * * yet such evidence was competent and relevant to show the degree of care required to be exercised by the defendant's agents in moving their trains across such point of its track so used by the public as this was shown to have been used, and as tending to charge them with notice of such use by the public."

[3] We are of the opinion that the inference could have been reasonably drawn from the evidence in this case that the crossing at which the plaintiff was struck was such a place as under all the circumstances in the case made it the duty of the defendant's agents or servants to keep a lookout; and, whether the train crew of the defendant engaged in switching the cars at the time of the injury actually knew of such frequent travel, it could have been reasonably inferred that the use had been so long continued and so common as to charge them with notice thereof.

Counsel for appellant insist that, under the following authorities, the only duty the defendant owed the plaintiff arose after the discovery of his peril, and that therefore the affirmative charge should have been given the defendant. Birmingham Sou. R. R. Co. v. Kendrick, 155 Ala. 352, 46 South. 588; L. & N. R. R. Co. v. Williams, 172 Ala. 560, 55 South. 218; A. G. S. R. R. Co. v. Linn, supra; Walker v. A., T. & N. R. R. Co., 194 Ala. 360, 70 South. 125; A. G. S. R. R. Co. v. Smith, 196 Ala. 77, 71 South. 455.

We are of the opinion, however, considering the facts of those cases and the questions there determined, they are not out of harmony with the conclusion here reached, and the authorities herein cited in support thereof. A reading of the case of Sims v. A. G. S. R. R. Co., 197 Ala. 151, 72 South. 328, will also disclose no conflict with the conclusion reached in the instant case. We are therefore of the opinion that the affirmative charge was properly refused the defendant.

[4] Whether or not charge 13 refused to the defendant is subject to criticism need not be determined, as we are of the opinion the substance of this charge was embraced in given charge H. Charge 16 refused to the defendant confines plaintiff's recovery to proof of subsequent negligence or wantonness on the part of defendant, and what we have herein stated sufficiently discloses that said charge was properly refused. Charges 18, 19, F, and H refused to the defendant relate to the evidence of the defendant, tending to show that plaintiff was crawling under the car at the time he was injured. The court in its oral charge expressly instructed the jury that, if at the time of his injury the plaintiff was crawling under the car, he was a trespasser, and that as a trespasser he could not recover, and the defendant would not be responsible for his injury. In addition thereto there were given charges D and I, which appear in the statement of the case. Reversible error therefore could not be predicated upon the refusal of these charges. We think this also applies to refused charge 20.

Charge B refused to the defendant was an affirmative instruction that there was no such use for a crossing by the public at track No. 4 as to place upon the defendant the duty of keeping a lookout for persons crossing there. Charge G was to like effect. What we have herein stated discloses that these charges were, in our opinion, properly refused.

[5] There was no evidence offered by plaintiff tending to show that the bell was not rung in approaching the place where plaintiff was injured; and the evidence for the defendant is without conflict that the bell was rung at the time. If charge C is not subject to the criticism of singling out a portion of the evidence, we think its refusal could properly be based upon the fact that, under all the evidence in the case, the subject thereof was not made an issue in the cause and was therefore abstract. The same applies to refused charge D.

[6] The complaint charges negligence in very general terms, as is permitted under our system of pleading in cases of this character.

[7] The theory of the plaintiff was that the cars were "kicked" on the track, and that there was no one on these cars to keep a lookout. The theory of the defendant was that, if the car which injured the plaintiff was put in motion by the engine of the defendant, the cars were shoved or pushed on to the track, and not "kicked." If, however, the cars were pushed on to the track, and

this without a proper lookout on the part of some one engaged in the switching of these cars, negligence could nevertheless be predicated thereon; and it was within the province of the jury to find that the cars were negligently pushed upon the track, although they discredited that part of the testimony of plaintiff that these cars were "cut loose" and "kicked" upon this track. Charge J was therefore properly refused.

[8, 9] The questions to the witness Banks, which made reference to the crossing of the path over the main line of defendant's road, were clearly to more properly place the location of the place at which the accident occurred; and, in addition to this, there was evidence for the plaintiff tending to show that the path that crossed track No. 4 ran from the end of Twenty-Fifth street across the main line of the defendant's road. Nor can we see any prejudicial error in permitting the witness Banks to testify that people lived beyond the furnaces, and there were camps for furnace employés in that direction, all of which were beyond the switching yards, but towards which the path led.

[10] We have carefully considered the assignments of error relating to the action of the court in overruling the motion for a new trial. We enter into no detailed discussion of the evidence; suffice it to say that it has been given very careful consideration. The trial court had the witnesses before him, and an opportunity to note their demeanor upon the stand. The evidence was in conflict. Under the familiar rule stated in the leading case of Cobb v. Malone, 92 Ala. 630, 9 South. 738, we are unwilling to predicate reversal upon this action of the court.

Finding no reversible error in the record, the judgment appealed from will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.