(90 South. 605)

**PAYNE, Director General of Railroads, v. ROY. (6 Div. 488.)**

(Supreme Court of Alabama. Oct. 13, 1921.)

**1. Railroads ⊕⇒339(1)—Wanton injury depends on frequency of travel at time of accident.**

Proof as to frequency of travel over railroad crossing to establish wantonness on the part of trainmen should be limited to testimony as to frequency of travel at the same time of day as the accident, since proof of travel at one time of the day would not necessarily show a populous crossing at some other hour.

**2. Evidence ⊕⇒144—Testimony as to number of persons using crossing held admissible, though indefinite.**

In an action for damage to an automobile struck by a train at a crossing, admission of testimony as to the frequency of travel at the crossing that "there are a good many that cross there going to work" held not error, though indefinite, since opposing attorney could have cross-examined witnesses as to what was meant.

**3. Evidence ⊕⇒492, 568(6)—Nonexpert witness could testify as to. speed of train; objection held to go to weight, rather than competency, of evidence.**

In action for damage to automobile struck by train at a crossing, a witness who had worked as a section hand for several months, and who had seen trains run all of his life, could testify as to the speed of a train though he was not an expert, and had never worked on trains, and had had no opportunity to' observe the speed of trains, and to form an idea as to how fast they were running; the objection to his testimony going to its weight and sufficiency, and not to its competency.

**4. Evidence ⊕⇒67(4)—Production of ordinance book in use at time of injury held prima facie evidence of existence of ordinance shown therein at such time.**

The production of an ordinance book in use at time of injury with certificate of city clerk as to enactment of ordinance printed therein, *held* prima facie evidence of the continued existence of the ordinance at time of the injury under Code 1907, § 1258, as amended by Acts 1911, p. 632, and sections 1259 and 3989, without proof that it had not been repealed prior to the injury.

**5. Evidence ⊕⇒18—Court judicially knows legal per diem payable to witness.**

The Supreme Court judicially knows that the $4 a day paid to witness was in excess of the legal per diem.

**6. Witnesses ⊕⇒376—Defendant could show that amount shown by plaintiff to have been paid witness by him was paid to reimburse him for what he would have earned by regular employment.**

Where plaintiff had shown by defendant's witness that defendant had paid witness an amount in excess of the legal per diem, the defendant should have been permitted to show by such witness that the amount so paid him merely reimbursed him for what he would have earned under his regular employment.

**7. Witnesses ⊕⇒267, 287(2)—Court has discretion as to cross-examination but cannot deny to a party the right to explain discrediting facts brought out by opposite side.**

Trial courts are given considerable discretion as to the cross-examination of witnesses but this discretion does not go to the extent of authorizing a denial to a party of the right to explain discrediting facts brought out by the opposite side.

**8. Railroads ⊕⇒350(7)—Negligence in omitting signals held for jury.**

In an action for damage to an automobile struck by a train at a crossing, in which the railroad's evidence showed that the bell was rung and the whistle blown, testimony of plaintiff's witnesses that they did not hear the bell or whistle, though negative evidence, made the question whether the bell was rung ·or the whistle blown a question for the jury.

**9. Railroads ⊕⇒350(32)—Proximate cause of automobile driver's injury held for jury.**

In an action for damage to an automobile struck by a train at a crossing, in which there was evidence that the engine of the automobile choked, and that the automobile stopped dead right on the crossing, and that but for such fact the automobile could have crossed the question of whether plaintiff's failure to stop, look, and listen before attempting to cross tracks was the proximate cause of the injury *held* for the jury.

**10. Railroads · ⊕⇒350(33)—Negligence after discovery of danger held for jury.**

In an action for damage to an automobile struck by a train at crossing, whether the engineer made every reasonable effort to stop the train after becoming conscious of the danger *held* for the jury.

**11. Railroads ⊕⇒350(34)—Wantonness of trainmen held for jury.**

In an action for damage to an automobile which had stopped dead on the track, in which there was evidence from which it could be in-

ferred that the engineer did not make every reasonable effort to stop the train after discovery of the danger, and that the train approached a populous crossing, without signals, at a high rate of speed, the question of whether trainmen were guilty of wantonness *held* for the jury.

12. Trial ⬤⇒253(9)—Special charge precluding recovery if flagman signaled plaintiff to stop and signaled engineer to proceed held properly refused.

In action for damage to automobile struck by train at crossing after automobile had stopped dead on track, refusal of special charge precluding recovery if plaintiff failed to stop after being warned to so do by flagman, and if flagman signaled engineer to proceed across track, *held* not error, in that it pretermitted the engineer's duty to resort to or use all preventive means to avoid collision after discovery of plaintiff's car on the track, which, under the evidence, was a question for the jury, and in that it acquitted engineer of wantonness regardless of the rate of speed at which train approached crossing.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwynn, Judge.

Action by Sam L. Roy against John Barton Payne, as Director General of Railroads, operating the Alabama Great Southern Railway for damages for the destruction of an automobile. Judgment for the plaintiff, and the defendant appeals.    Transferred from the Court of Appeals under Acts 1911, p. 449, § 6.   Reversed and remanded.

Counts 1 and 2 are simple negligence and allege the destruction of plaintiff's automobile by its being struck by a train at the intersection of a public highway, to wit, Nineteenth street in the city of Bessemer. Count 3 is for wanton injury, and count 4 is for negligence after discovered peril. The following charges were refused to the defendant:

(1) Affirmative charge as to all the counts.

(2) Affirmative charge as to count 1.

(4) Affirmative charge as to count 3.

(5) Affirmative charge as to count 4.

(25) "If you believe from the evidence in this case that the plaintiff negligently drove his automobile upon the track without listening and looking, as required by law, and by his said act found himself and his automobile in a place of danger, and then undertook to extricate his automobile, and that the engineer on defendant's train discovered his situation, and by prompt use of the proper appliances on said engine undertook to stop said train and prevent said collision, but was unable to prevent it, then your verdict must be for the defendant."

(B) "I charge you that, if you believe from the evidence that the flagman on Nineteenth street crossing waved a red light in front of plaintiff, and that plaintiff saw it, and that he understood it as a danger signal of an approaching train, and that the engineer saw such a red light at the time it was alleged to have been waved in front of the plaintiff, and that such signal meant to said engineer that the flagman on said crossing was warning those about to cross there of the approach of his train, that he had the right to approach said crossing with his service brakes on, and was not required to use his emergency brakes."

(C) "I charge you that, if you believe from the evidence that defendant's engineer had been signaled by the flagman on the Nineteenth street crossing to proceed to run across said crossing, and that said flagman had also by the same act and signal notified plaintiff of the approach of said train, and that plaintiff saw such signal, and disregarded the same, and tried to cross said track, you cannot find for the plaintiff under count 1 of the complaint."

(D) "I charge you that, if the flagman on Nineteenth street signaled plaintiff to stop, and plaintiff saw said signal in time to stop his automobile before reaching the track of defendant, and by the same signal and act the engineer was signaled to proceed across Nineteenth street crossing, and he did so proceed across Nineteenth street, the defendant would not be guilty of willful or wanton negligence, and you cannot find for the plaintiff under the third or fourth count of the complaint."

(F) "The mere operation of a railroad train across a public street that is frequently crossed by a great many people at a high rate of speed, and colliding with plaintiff's automobile, is not of itself alone enough to constitute willful or wanton negligence when on such crossing a flagman was located who did signal such engineer that such crossing was clear, and that no one was attempting to cross thereon, and the said engineer then and there acted upon such signal."

(G) "I charge you that, if you believe the evidence in this case, you must find that the person in charge of defendant's train was not guilty of negligence or wantonness."

(H) "I charge you that, if you believe the evidence in this case, you must find that the person in charge of the defendant's locomotive was not guilty of negligence or wantonness."

Paul Nabors testified as a witness. After stating that he did not know just how many people crossed at that crossing daily, referring to the Nineteenth street crossing, was asked, "Are there as many as a hundred?" and, after objection being overruled to the question, the witness answered, "At that time of the morning [referring to the time of the accident] there are a great many that cross there going to work."   J. M. Scott testified that he was clerk of the city of Bessemer, and had been for four years and one month. He identified one of the ordinance books of the city of Bessemer, and stated that the ordinance referred to was dated prior to August, 1919, and that the book identified was one of the books of ordinance of the city of Bessemer, in August, 1919.    The ordinance was then introduced, over the objection of the defendant, and was known as Ordinance No. 142, passed June 18, 1907, and approved June 19, 1907, and has the certificate of the clerk of the city of Bessemer of date of July 5, 1907, certifying that it was passed and ap-

proved on the date above mentioned, that it was published in the Bessemer Workman, a newspaper published in Bessemer, on June 21, 1907, and reported on the minutes of the city of Bessemer at page 47. The other exceptions to evidence sufficiently appear.

Smith, Wilkinson & Smith, of Birmingham, for appellant.

The court erred in permitting the introduction of the ordinance. 179 Ala. 97, 59 South. 597. The court erred in refusing charges 2, 20, and C, requested by the defendant. 23 Ala. 76; 102 Ala. 20, 16 South. 99; 117 Ala. 100. 23 South. 130; 179 Ala. 299, 60 South. 922; 192 Ala. 392, 68 South. 277; 202 Ala. 222, 80 South. 44; 201 Ala. 308, 78 South. 84. The court erred in refusing charges 5 and B. 201 Ala. 308, 78 South. 84; 92 Ala. 262, 9 South. 230; 91 Ala. 560, 8 South. 778; 103 Ala. 134, 15 South. 508; 100 Ala. 618, 13 South. 615. Defendant was entitled to the general charge on the whole complaint. 179 Ala. 299, 60 South. 922; 201 Ala. 308, 78 South. 84. The court erred in refusing to permit Ed Ward to show what his wages were, in reply to the suggestion that the defendant had paid more than the per diem of witnesses. 23 Ala. 76; 102 Ala. 20, 16 South. 99; 117 Ala. 100, 23 South. 130. Counsel discuss other assignments of error, but without further citation of authority.

Goodwyn & Ross, of Bessemer, for appellee.

Frequency of passage generally may be shown, and it may also be shown at what hour the passage is more frequent. 166 Ala. 575, 51 South. 959; 179 Ala. 136, 59 South. 584; 189 Ala. 604, 66 South. 580. A witness need not be an expert, to be qualified to testify to the speed of the train. 187 Ala. 622, 65 South. 984; 121 Ala. 489, 26 South. 35; 4 Ala. App. 473, 58 South. 927. The ordinance was properly admitted. Sections 1259 and 3989, Code 1907; Acts 1911, p. 632; 16 Ala. App. 592, 80 South. 166. There was no error in refusing to permit Ed Ward to show what he received per day for wages. 9 Ala. App. 679; 16 Ala. App. 4, 74 South. 972. The stopping of the car was a remote, and not a proximate, cause of the injury, and defendant was entitled to recover for simple negligence. 17 Ala. App. 96, 82 South. 36; 203 Ala. 82, 82 South. 96; 147 La. 771, 85 South. 911. The question of wantonness was for the jury. 198 Ala. 102, 73 South. 430; 203 Ala. 136, 82 South. 166; 203 Ala. 284, 82 South. 534; 179 Ala. 303, 60 South. 922; 166 Ala. 575, 51 South. 959; 153 Ala. 157, 45 South. 177; 189 Ala. 604, 66 South. 580.

ANDERSON, C. J. [1, 2] In proving the frequency of travel along a highway over a railroad crossing, for the purpose of establishing wantonness on the part of trainmen, the frequency of the travel should, of course, correspond with the time of the injury, as proof of travel at one hour of the day would not necessarily show a populous crossing some other hour, or proof of a populous crossing throughout the day would not establish such a crossing at night. But we do not think that the trial court erred in permitting the witness Nabors, to testify:

"At that time of morning there are a good many that cross there going to work."

True, this evidence was not definite as to the number, but what the witness meant by "a good many" could have been ascertained upon cross-examination, and this evidence was relevant and competent, and tended to corroborate the plaintiff's other evidence, tending to show that it was crossed with frequency about that hour of the day. Nor did the trial court commit reversible error in permitting the witness Scott to testify that there was a good deal of passing at 7:30. This evidence would, of course, have been of greater probative force had it related to the exact hour of the injury, but it was admissible, in connection with the other evidence, to show the nature and character of the crossing throughout the day, and there was evidence that the accident occurred in the daytime, and after travel commenced. These comments are also applicable to the objection to the proof that street cars crossed at this point. Moreover, we do not find that the plaintiff's evidence as to the frequency of travel at this hour was controverted by the defendant's evidence. On the other hand, it was, in a sense, corroborated by the fact that the defendant regarded it as such a crossing as to require a flagman there at the time of the injury.

[3] The witness Jim Davis did not have to be an expert to testify as to the speed of the train. A. G. S. R. R. v. Hall, 105 Ala. 599, 17 South. 176. It is true, he admitted on cross-examination that he had never worked on trains, and had no opportunity to observe the speed of same, and to form an idea as to how fast they were running. But he subsequently stated that he worked on a section several months, that trains passed all the time he was on the section, and that he had seen trains run off and on all of his life. The fact that he was not an expert, or was not as close an observer as to the running of trains as others, went to the weight and sufficiency of his evidence as to the speed of the train, but did not render the same incompetent or improper.

[4] The plaintiff substantially complied with sections 1259 and 3989 of the Code of 1907, and the amendment of section 1258 by the Acts of 1911, p. 632, as to showing the adoption and existence of the city ordinance. It is argued that, while the proof shows that it was in an ordinance book in use in August, 1919, and was adopted prior to the injury,

it may have been suspended or repealed prior to the accident and that the proof fails to show that said ordinance was actually in force at the time of the injury. It is sufficient to say that the proof and certificate accompanying the introduction of the ordinance was not only prima facie evidence of the due adoption of same, but of the "continued existence" thereof. Section 3989 of the Code. The facts in reference to the ordinance in question are quite different from those dealt with in the cases of Adler v. Martin, 179 Ala. 97, 59 South. 597, and Excelsior Laundry v. Lomax, 166 Ala. 612, 52 South. 347. There, there was nothing to show the date of the adoption of the ordinance, and, from aught that appeared, it may have been adopted after the accident in question. Here the adoption of the ordinance was proved prior to the accident, and prima facie its existence continued.

[5-7] The plaintiff having shown by the defendant's witness Ed. Ward that the defendant paid him $4 for a day's attendance upon a former term or day as a witness, and which said sum we judicially know was in excess of the legal per diem, the defendant should have been permitted to show by said witness that the amount so paid him merely reimbursed him for what he would have earned on said day under his regular employment. The evidence brought out by the plaintiff as to this payment unexplained, not only affected the credibility of the witness (Sou. R. R. v. Morris, 143 Ala. 628, 42 South. 17) but reflected upon the defendant, and the witness should have been permitted to show facts explanatory of the matter, and which tended to qualify or neutralize the damaging effect of this evidence. (Campbell v. State, 23 Ala. 76; Johnson v. State, 102 Ala. 20, 16 South. 99; McAlpine v. State, 117 Ala. 100, 23 South. 130). Of course, trial courts are given considerable discretion as to the cross-examination of witnesses, but this discretion does not go to the extent of authorizing a denial to a party the right to explain or qualify discrediting facts brought out by the opposite side. Tate v. State, 86 Ala. 33, 5 South. 575; Wilson v. State, 195 Ala. 679, 71 South. 115; Wray v. State, 154 Ala. 42, 45 South. 697, 15 L. R. A. (N. S.) 493, 129 Am. St. Rep. 18, 16 Ann. Cas. 362.

[8] There was evidence tending to establish the charge of simple negligence, both as to running the train in violation of the city ordinance, as well as failing to observe the statutory requirements as to signals in approaching the crossing and station. True, the defendant's evidence showed that the bell was rung and the whistle blown, but the plaintiff's witnesses testified as to not hearing them, and, while it was negative evidence as against positive, it made it a question for the jury. Indeed, the defendant's contention for the general charge as to the simple negligence count is based upon the idea that the plaintiff was guilty of proximate contributory negligence.

[9] We may concede that the plaintiff was guilty of the most flagrant negligence in failing to stop and look and listen after reaching a point where he could have seen or heard an approaching train; yet it was a question for the jury as to whether or not the plaintiff's conduct, in this respect, under the circumstances disclosed by the evidence, was the proximate cause of the injury. Hines v. Paden, 204 Ala. 592, 87 South. 88. Counsel attempt to differentiate this case from the case at bar upon the idea that in said case the train was further off, and the plaintiff had ample time to have crossed before the train reached the crossing but for the fact that his car stalled, or "went dead," on the track. As we understand, the principle underlying said case is that, while the plaintiff was guilty of contributory negligence, it was a question for the jury as to whether or not said negligence was the proximate cause of the injury, as they could infer from the evidence that plaintiff would have cleared the track in safety but for the intervention of another factor—that is, the accidental and unavoidable stopping of the car upon the track. Therefore, applying this principle to the case at bar, it was a question for the determination of the jury as to whether or not the plaintiff's negligence was the proximate cause of the injury to his car, or whether or not it was due to the fact that the car "went dead" on the track, and could not be moved before it was struck by the train. The occupants of the car had time to get out and get off the track between the time it "went dead" and when struck by the train, and the jury could have inferred that, but for the intervention of this unavoidable accident, the car would have cleared the track before the train reached the crossing. Moreover, the defendant's witness Granger testified:

"I saw the automobile coming and the automobile tried to go over, and they would have gone over—would have done it—but the engine choked and stopped dead right on the crossing."

Moreover, there was evidence as to subsequent negligence, recoverable under the first count, notwithstanding the trial court erroneously eliminated the subsequent negligence count No. 2. A. G. S. R. R. v. McWhorter, 156 Ala. 269, 47 South. 84; Foshee's Case, 125 Ala. 199, 27 South. 1006.

[10, 11] We cannot put the trial court in error for refusing the general charge, requested by the defendant, as to the wanton counts. There were two theories upon which this question was properly submitted to the jury under the evidence: In the first place it was a question for the jury as to whether or not the engineer made every reasonable

effort to stop the train after becoming conscious of the danger. He testified that he did, and, if his testimony stood alone as to this fact, he was not guilty of wantonness; but he admitted that he was looking ahead, and there was evidence that the train could have been stopped, at the rate of speed it was going, according to some of the evidence, between the time the car stopped upon the track and when it was struck by the train, and, as he was looking ahead, the jury could have inferred that he saw the car when it reached the track and when it stopped. Second, there was also proof that the train approached a populous crossing without a warning signal or signals, at a high rate of speed, and from which the jury could have inferred wantonness. A. G. S. R. R. v. Bell, 200 Ala. 563, 76 South. 920. True, the evidence discloses that the defendant had a flagman at the crossing, and the engineer no doubt had the right to rely, to a great extent, on signals from said flagman, and, if they were not properly given, the flagman, and not the engineer, would be at fault; but we do not think that the existence of a flagman, or the signals he may have given, did or could relieve the engineer of the duty to make every effort to stop the train after the discovery of peril, or from not having his train under such control that he could conform to the signals when given. In other words, the existence of a flagman did not authorize the engineer to approach such a crossing at the rate of speed that some of the evidence shows the train was going. The cases cited and relied upon by appellant's counsel are not in conflict with the present holding. Rothrock v. A. G. S. R. R., 201 Ala. 308, 78 South. 84, Ga. Pac. R. R. v. Lee, 92 Ala. 262, 9 South. 230, and H. A. & B. R. R. v. Maddox, 100 Ala. 618, 13 South. 615, did not deal with a populous crossing. In H. A. & B. R. R. v. Sampson, 91 Ala. 560, 8 South. 778, wantonness was not involved, and the case of A. G. S. R. R. v. Linn, 103 Ala. 134, 15 South. 508, dealt with a private crossing used only at intervals.

[12] Defendant's refused charge D, the basis of the thirty-sixth assignment of error, was refused by the trial court without error. It pretermits the engineer's duty to resort to or use all preventive means to avoid the collision after discovering the plaintiff's car on the track, and which, as above pointed out, was a question for the jury. Moreover, it authorizes the acquittal of the engineer of wantonness, under the facts hypothesized, regardless of the rate of speed with which he approached the crossing. He could have been acting upon the signals of the flagman, and yet gone at such a rate of speed as to have rendered his conduct reckless and dangerous at this particular place. At least, it was in the province of the jury

to so infer. For the foregoing reasons, if not others, the trial court did not err in refusing the defendant's requested charges 22 and F.

Charges G and H, requested by the defendant, are peremptory instructions that the defendant's servants were not guilty of either wantonness or simple negligence, and invaded the province of the jury. Likewise charges B and C invaded the province of the jury, as it was for them to determine whether or not, under one phase of the evidence, as to the rate of speed the train was going the engineer should have used the emergency brakes. For the same reason there was no error in refusing defendant's requested charge 25.

Defendant's requested charge 1, the general charge as to the entire complaint, was, of course, properly refused.

For the error above pointed out, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.