(102 So. 125)

### ALABAMA GREAT SOUTHERN R. CO. v. GRAUER. (2 Div. 830.)

(Supreme Court of Alabama. Nov. 6, 1924. Rehearing Denied Nov. 27, 1924.)

**1. Railroads ⬅❯395—Violation of speed ordinance admissible under wanton count.**

Violation of speed limit of ordinance is simple negligence, yet under wanton count ordinance is admissible in connection with other evidence of violation as basis for inference of character of act concerning which complaint is made.

**2. Evidence ⬅❯366(1)—Manner of admitting town ordinance as to speed limit of trains held without error.**

In view of Code 1907, § 3989, where mayor of town identified book as book of ordinances of town, testified that it contained ordinance involved as to speed limit of trains, and identified signatures of mayor and clerk, and plaintiff's counsel read first section, and offered to read remainder, whereupon defendant's counsel said, "Just consider it in," there was no reversible error in manner of admitting ordinance in evidence.

**3. Railroads ⬅❯397(5)—Evidence of customary use of track known to trainmen held admissible.**

Evidence of custom and usage of tracks by large numbers of people, on special occasions, well known to those operating engine or train over tracks, was admissible, if from usage it could be reasonably inferred that like usage would be exercised, and that human beings would be exposed to peril at time of accident.

**4. Railroads ⬅❯397(5)—Evidence held competent to show customary use by public.**

Evidence of railroad company's keeping up of steps and of deceased's statements as to contemplated use of track before accident was competent to show use by deceased in accordance with customary use of tracks by public, and that train crew knew that deceased was going to use track a few minutes before train started.

**5. Trial ⬅❯133(6)—Withdrawal and exclusion of improper argument held to cure error therein.**

Where remarks of plaintiff's counsel in argument that he had especially selfish idea about accident because of his little folks who lived in county were not within class declared ineradicable by withdrawal thereof and exclusion, denial of discontinuance because of argument was without reversible error, in view of withdrawal and exclusion from jury.

**6. Trial ⬅❯228(3) — Refusal of misleading charge held without error.**

Requested charge that, if for long time prior to time plaintiff's intestate was killed defendant's track had been used by small number of persons, defendant was under no duty to keep lookout for trespassers was properly refused because indefinite and comparative words "small number of persons" were misleading.

**7. Trial ⬅❯253(9) — Refused charge ignored evidence.**

There was no error in refusing plaintiff's charge which ignored evidence of general or customary use of defendant's track as a walkway by the public at time and place of accident.

**8. Trial ⬅❯267(1)—Written charges given or refused in terms written.**

Written charges should be given or refused in terms in which they are written, and should not be qualified by oral or written instructions, but, where they are susceptible of two constructions, explanatory charges may be requested and given; instruction defining terms being not objectionable as qualifying written instructions.

Appeal from Circuit Court, Greene County; Fleetwood Rice, Judge.

Action for damages for wrongful death by L. M. Grauer as administrator of the estate of Hilton Grauer, deceased, against the Alabama Great Southern Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The mayor of the town of Epes, as a witness for plaintiff, was shown a book which (over objections of defendant) he identified as the book of ordinances of the town, and testified that it was kept in the office of the town at the time he became mayor, and since that time; that it contained the ordinance here involved, and that such ordinance was in the book at the time of the accident; that he knew the mayor and clerk, whose names were signed following the ordinance, and that the signatures shown were the signatures of the officers in question. Over defendant's objection the ordinance was introduced in evidence. Plaintiff's counsel read the first section of the ordinance, and thereupon, as the bill of exceptions shows, "said to defendant's counsel in reference to section 2 of the ordinance: 'I don't care anything about that unless you do—the balance of it is in reference to standing on a crossing—has nothing to do with this case.' Counsel for defendant therefore (thereupon) said: 'If you have introduced all of it you had better put it in.' Thereupon plaintiff's counsel said: 'All right, if you want it in I'll read it. I have no objection to it.' Thereupon defendant's counsel said: 'Just consider it in.'"

The first section of the ordinance is as follows:

---

⬅❯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Be it ordained by mayor and counsel of the town of Epes, Ala., that it shall be unlawful for locomotives or trains to run at a greater rate of speed than six miles an hour within the corporate limits of said town of Epes, and any engineer or conductor who shall cause any engine or train to run at a greater speed than six miles an hour within the limits of said town shall be guilty of a misdemeanor—on conviction thereof shall be fined not less than five nor more than fifty dollars."

These charges were refused to defendant:

"A. If you believe from the evidence that for a long period of time prior to the time 'plaintiff's intestate was killed the defendant's track between Epes station and the bridge had been frequently, habitually, and regularly used by a small number of persons, the court charges you that the person or persons in charge and control of the train on the occasion complained of were not under any duty to keep a lookout for trespassers on the track at or near the (?) deceased was killed, solely because of such use of such track by such numbers of persons."

"A4. The court charges the jury that under the evidence .in this case you cannot find for the plaintiff on account of the train of defendant on the occasion complained of being run at a high and dangerous rate of speed."

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

Where a trespasser is injured while using a railroad track longitudinally for a passageway, it is not permissible to show that on special occasions or at hours other than that at which the injury occurred great or unusual numbers of people have used or habitually used the track. L. & N. v. Heidtmueller, 206 Ala. 29, 89 So. 191; Grauer v. A. G. S., 209 Ala. 568, 96 So. 915. Argument of counsel stating as facts matters not in evidence is illegal. Ala. I. & F. Co. v. Benenante, 11 Ala. App. 644, 66 So. 942; B. R., L. & P. Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann. Cas. 1914C, 1037; Anderson v. State, 209 Ala. 36, 95 So. 171; Standridge v. Martin, 203 Ala. 486, 84 So. 266; Willus v. State, 15 Ala. App. 454, 73 So. 766. A jury's discretion in awarding punitive damages is not arbitrary. Coleman v. Pepper, 159 Ala. 310, 49 So. 310; Cox v. B. R., L. & P. Co., 163 Ala. 170, 50 So. 975.

Harsh, Harsh & Harsh, of Birmingham, and Harwood, McKinley, McQueen & Aldridge, of Eutaw, for appellee.

Violation of a speed ordinance is admissible, in connection with other conduct of defendant's employés, which together may constitute wantonness. Yarbrough v. Carter, 179 Ala. 359, 60 So. 833; B. E. & R. Co. v. Williams, 190 Ala. 57, 66 So. 653; L. & N. v. Webb, 97 Ala. 315, 12 So. 374. General usage of the track before the time of the injury is admissible to show the fact, as well as knowledge of the .fact, that it was likely to be so used at the time. Sou. Ry. v. Forrister,

158 Ala. 483, 48 So. 69; Haley v. K. C., M. & B., 113 Ala. 642, 21 So. 357; N. A. Ry. v. Guttery, 189 Ala. 611, 66 So. 580; A. G. S. v. Guest, 136 Ala. 352, 34 So. 968; Grauer v. A. G. S., 209 Ala. 568, 96 So. 915; Sou. Ry. v. Stewart, 179 Ala. 309, 60 So. 927; Birmingham Sou. v. Fox, 167 Ala. 285, 52 So. 889; A. G. S. v. Snodgrass, 201 Ala. 655, 79 So. 125; L. & N. v. Heidtmueller, 206 Ala. 30, 89 So. 191; C. of Ga. v. Partridge, 136 Ala. 596, 34 So. 927.

THOMAS, J.   A report of the case is Grauer v. A. G. S. R. Co., 209 Ala. 568, 96 So. 915. On the last trial the cause was submitted to the jury upon the wanton count of the complaint. No question upon the pleadings is presented for review.

[1, 2] This court has declared that the violation of the speed limit set forth in a municipal ordinance is simple negligence only; yet under a wanton count the ordinance is admissible, in connection with other evidence of its violation, as the basis for an inference of the character of the act concerning which complaint is made. Yarbrough v. Carter, 179 Ala. 356, 60 So. 833; B., E. & B. R. R. Co. v. Williams, 190 Ala. 53, 66 So. 653; A. G. S. R. Co. v. Bell, 200 Ala. 562, 76 So. 920; L. & N. R. R. Co. v. Lloyd, 186 Ala. 119, 65 So. 153; L. & N. R. R. Co. v. Webb, 97 Ala. 308, 315, 12 So. 374. There was no reversible error in the rulings relating to, and the admission in evidence of, the ordinance of the town of Epes in the manner indicated by the bill of exceptions. That ordinance was considered as read and in evidence. Code 1907, § 3989; Town of Elba v. Cooper, 208 Ala. 149, 93 So. 853; Payne v. Roy, 206 Ala. 432, 90 So. 605. The dictum contained in Central of Ga. Ry. Co. v. Blackmon, 169 Ala. 304, 313, 53 So. 805, is not in harmony with the authorities first above cited. In that case the injury was sustained without the corporate limits, and the issue of fact was subsequent negligence. On the former appeal in the instant case we did not hold that the ordinance in question was not admissible, in evidence, but only that its exclusion, under the facts of the case, was not prejudicial to plaintiff.

[3] In L. & N. R. R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191, and Grauer v. A. G. S. R. Co., 209 Ala. 568, 96 So. 915, it was declared not permissible to prove extraordinary or exceptional uses of the track at times materially different from that when the accident occurred. However, this exception would not preclude evidence of a custom and such usage of large numbers of people on special occasions well known to those operating engines or trains over the tracks at such place and at such time, if from such usage it could be reasonably inferred that a like usage would be exercised, and that human beings (in all reasonable probability) would

be exposed to peril at the time of the accident. It is the likelihood of peril to the safety of passers-by known to defendant's employees which makes the duty—not the place itself. Nave v. A. G. S. R. Co., 96 Ala. 264, 11 So. 391; Ga. Pac. R. Co. v. Lee, 92 Ala. 271, 9 So. 230; Haley, Adm'r, v. K. C., M. & B. R. R. Co., 113 Ala. 640, 652, 21 So. 357; A. G. S. R. Co. v. Guest, Adm'r, 136 Ala. 348, 352, 34 So. 968; Southern Ry. Co. v. Forrister, 158 Ala. 477, 483, 48 So. 69; B. S. Ry. Co. v. Fox, 167 Ala. 281, 285, 52 So. 889; Southern Ry. Co. v. Stewart, 179 Ala. 309, 310, 60 So. 927; Northern Alabama Ry. Co. v. Guttery, 189 Ala. 604, 611, 66 So. 580; A. G. S. R. Co. v. Snodgrass, 201 Ala. 653, 655, 79 So. 125; Grauer v. A. G. S. R. Co., 209 Ala. 568, 573, 96 So. 915.

There was no reversible error committed in permitting the witness Dr. Reid and others to declare the general or ordinary use of the track at the point in question by the public before and to the time when Hilton Grauer was killed. This was not an inquiry of the use of the track at the point in question by a number of people on special occasions, as was the subject of discussion in L. & N. R. R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191. In the former appeal (in this case) Mr. Justice Somerville noted as pertinent questions of fact for the jury the "density of the neighboring population," "general custom of use" of the track as a "walkway," the "number," "frequency, and notoriety" of such use by the people. These observations illustrate the meaning of the immediate and subsequent clause of that opinion that evidence of the use on "special occasions," for "special purposes," was immaterial as being of occasions not likely to recur generally. So by the expression "special purposes" was meant "not likely to occur" at the time and place in question. These expressions are consistent with the other declarations of this court contained in the foregoing decisions that evidence of a general usage or custom was pertinent and admissible in a case like this. There was no error in permitting the several witnesses (Reid, Grauer, Legrone, Anderson, Sawls, and Smith) to testify as to the custom or general use by the traveling public of the defendant's tracks as a walkway at the time and place in question. In the admission of such evidence the exception declared and defined in L. & N. R. R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191, was not overlooked.

[4] A witness (Miss Richie) had testified as to the details of the accident, the general and customary use by the public and her family of said tracks as a walkway to and at the place where Hilton Grauer was killed, and was asked this question: "Do you know who kept those steps up, whether the railroad did or not?" She answered: "The railroad kept the steps up." This evidence,

and that of R. L. Hilton, taken with the other evidence, tended to show the custom of the traveling public to use the track at the time and place as a walkway was by permission and a circumstance or basis for the inference, with other evidence, that the custom was known to the employees of defendant in charge of the train.

The witness R. L. Hilton, the depot agent, was asked:

"Now, get back to what was said by Hilton Grauer [the deceased] and yourself and the conductor and any other person in that crowd that were there in the presence of each other on the day that Hilton was killed, and shortly before he was killed."

The witness answered:

"He [the deceased] came up to where we were, Conductor Garrett and myself, and said that he was going down the track to Mrs. Horton's to take dinner, and Conductor Garrett told him he wished he could go with him. And I asked him to wait and take dinner with me and go down later, and he said that he was invited there by some young ladies for dinner, and he would have to keep his date, and he immediately left us, and we didn't see him any more. * * * When Hilton Grauer left us he started down the track. The Mrs. Horton that I spoke of is Mrs. Oster's mother, and they live together. When he started down the track the local train killed him. When he left us the local was standing still, but it started soon afterwards."

This evidence was adduced at the other trial, and is set out in the statement of facts. The learned justice observed of the evidence generally (Grauer v. A. G. S. R. Co., 209 Ala. 572, 96 So. 918):

"Do the facts of the case satisfactorily show that some person would probably be on the track at any given time; that his probable presence there is known to the responsible trainmen; and that, with such knowledge in mind, they intentionally, not inadvertently, omit a precaution which any reasonable man must understand will probably result in injury to any person on the track in front of the advancing train?"

It was certainly competent to show a use of the track by deceased in accordance with the customary use of the same by the public, and that responsible members of the train crew knew that Grauer was going down the track (to Mrs. Horton's or Mrs. Oster's—who "live together") a few minutes before the train was started. Several assignments of error challenge the argument of counsel for plaintiff. They will be considered as presented by counsel.

[5] The suit was under the homicide statute. When punitive damages are awarded, the purpose of the statute is to prevent homicides, and is not for the purpose of awarding compensation. Authorities collected in Alabama Power Co. v. Stogner, 208 Ala. 666, 669, 670, 95 So. 151 et seq. The preliminary

observations of counsel in the opening argument for plaintiff were a proper statement of the nature and general effect of the suit. However, the concluding argument of plaintiff's counsel contained the statement that he ·had "an especially selfish idea in it, * * * my little folks live in Greene county," which was improper, and was withdrawn and excluded from the jury. During the closing argument for plaintiff further remarks of plaintiff's counsel were objected to, withdrawn, and excluded from the jury by the court. At the conclusion of this argument defendant's counsel moved a discontinuance of the cause, based on said several arguments of plaintiff's counsel we have noted above. In overruling the motion no reversible error intervened. The remarks which were improper were withdrawn and excluded. This may be effectively done, since these remarks did not come within the class declared ineradicable by withdrawal or instruction of the court. Moulton v. State, 199 Ala. 411, 74 So. 454; Anderson v. State, 209 Ala. 36, 95 So. 171; Alabama Power Co. v. Goodwin, 210 Ala. 657, 99 So. 158; Davis v. Quattlebaum, 210 Ala. 242, 97 So. 701; T. R. N. Co. v. Walls, 209 Ala. 320, 96 So. 266; Davis v. State, 209 Ala. 409, 96 So. 187; Mobile L. & R. Co. v. Gallasch, 210 Ala. 219, 97 So. 733; B. T. L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas. 1916A, 543. In Metcalf v. St. L. & S. F. R. R. Co., 156 Ala. 240, 47 So. 158, the plaintiff sought a reversal because of the exclusion, on objection of defendant, of the remark, "You will never find an employee working for any corporation that ever told anything unfavorable against his employer." This argument was properly excluded. Davis v. Quattlebaum, 210 Ala. 242, 97 So. 701. It was a statement or appeal to passion or prejudice different from that contained in the argument of plaintiff's counsel, appealing to a too common human trait—not to admit one's negligence or mistake. It was an unfortunate way of saying that human beings were not infallible, not exempt from liability to mistake.

The exceptions taken to portions of the oral charge, when the charge is' considered as a whole, are unavailing. The inferences of fact to be drawn by the jury in the consideration of the whole evidence prevented the giving of the several general affirmative charges requested. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

_ [6] There was no error in refusing defendant's written charge A. Its refusal may be rested on the use of the indefinite and comparative words "a small number of persons," and for this reason it was misleading. However, the matter sought to be embraced therein was covered by the charges given by the court. Refused charge 1–A, made the subject of argument, is not contained in the record. If refused charge 1–Q was intended, under the whole evidence and the only count that went to the jury, the inferences of fact that might be drawn as to Manderson's conduct or failure to keep a proper, lookout or to signal were for the jury. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. However this may be, we cannot consider refused charge 1–Q.

[7] Charge A–4, refused to defendant, ignored the evidence tending to show the general or customary use of the track of defendant as a walkway by the public at the time and place of the homicide, and evidence from which inferences might be drawn that the train was proceeding at a dangerous rate of speed in excess of the ordinance of the town of Epes. Assignments of error as to refused charges E, HH, M, and 1–N are not insisted upon in argument of counsel. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158.

[8] Written charges should be given or refused in the terms in which they are written, and should not be qualified by oral or written instructions. However, where given charges are susceptible of two constructions, explanatory charges may be requested and given without the commission of reversible error. Instructions which define terms held not objectionable as qualifying written requested instructions. B. S. Ry. Co. v. Harrison, 203 Ala. 284, 82 So. 534; Boyette v. Bradley (Ala. Sup.) 100 So. 647;[1] Louis Pizitz D. G. Co. v. Cusimano, 206 Ala. 689, 91 So. 779; Callaway & Truitt v. Gay, 143 Ala. 524, 39 So. 277. The explanatory charge given at plaintiff's request was proper.

The motion for a new trial was properly overruled.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

### On Rehearing.

The case has again been carefully considered on rehearing. While usage at the moment of the accident is a material and determinative question of fact in declaring liability vel non, still general usage before the time of the injury is admissible in evidence to show the fact, and the knowledge thereof, that human beings, in all reasonable probability, would be exposed to peril on the track at the place and time of the accident and injury. In L. & N. R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191, it was held that exceptional and extraordinary use of the track at materially different times of day from 'that when the injury was inflicted was not sufficient to establish the usage or custom so as to subject to liability for wanton-

---

[1] 211 Ala. 370.

ness; that is to say, evidence of occasions of use that are not likely or reasonably probable to recur at the time of the accident is not sufficient. This is illustrated in the Heidtmueller Case, supra, as the daily convening or closing of school at a regular hour materially different from the hour of the Heidtmueller homicide was not sufficient to establish a custom at the time of the homicide. The court there said:

"While we treat this case upon the assumption that this child was killed by train No. 2, and while using its track as a walk or passageway, we do not wish to be understood to hold that the evidence is sufficient to reasonably establish the fact that the child was killed while using the track in the ordinary way, on which the plaintiff relies to establish such a general and customary use as to charge this defendant with wantonness on the part of its agents or servants. Southern R. R. Co. v. Stewart, supra [179 Ala. 304], and cases therein cited."

Appellant invokes consideration of special rulings and exceptions. They may be illustrated by the assignments of error numbered 127 and 129. The question, "Well, did they ever use the railroad tracks in going to and from the river up to the time this boy was killed." and answer, "Yes, sir; I have seen a good many of them come in and walk down to the bridge end and see the river. Especially when the water is high numbers of them go down to see the river," went to the custom or use at the place at and before the time of the homicide. It is true that the latter phrase of the answer of the witness, "Especially when the water is high numbers of them go down to see the river," might have been excluded on specific motion, separating it from the first part of the answer. Such motion was not made.

Assignment of error referred to in brief as No. 122 is predicated on the question, "Do you know whether or not automobiles traveled up there before that," and answer, "Yes, sir; I have seen automobiles cross over there in a skiff before the time the boy was killed." This question must be interpreted or illustrated by the previous questions and answers tending to show the previous and existing usage and custom at the place and at the time in question. The witness had been permitted to testify that he had seen negroes who lived on "this side of the river go across the river in skiffs and get up on the railroad at the bridge and come up to Epes"; that there was not at that time an automobile road on the Greene county side up to the skiff landing; that, at the time of the trial, "they are working on the roads now, putting a ferry in down below" (there was no objection to this last statement); and the witness was then asked, "Do you know whether or not automobiles traveled up there before that?" (meaning the time of the accident), and replied, "Yes, sir; I have seen automobiles cross over there in a skiff before the time the boy was killed." Counsel for plaintiff then stated he was inquiring then "up to the time this boy was killed and not afterwards," and asked the witness, "would or not the people who were tributary to Epes * * * that traded there, brought cotton * * *—were there any people of that sort that would habitually visit Epes up to the time this boy was killed?" The witness answered, "Yes, I have seen a few visit Epes." He was then asked, "Well, many or few that would trade in Epes came there and sold their cotton and other things?" and answered, "Well, I have seen hundreds; I reckon thousands of them." Thereupon the witness was asked the question adverted to at the outset, "Well, did they ever use the railroad tracks in going to and from the river up to the time this boy was killed?" and answered, "Yes, sir; I have seen a good many of them come in and walk down to the bridge end and see the river. Especially when the water is high numbers of them go down to see the river." There was no evidence that the water was high at the time of the injury. As to the last answer it is recited in the bill of exceptions: "Defendant moved to exclude this answer on the same grounds as assigned in the objection to the question, which motion the court overruled, and the defendant then and there duly excepted." The grounds of objection to the question were "that it called for illegal, irrelevant, and immaterial testimony, was not confined to the approximate time of day of the accident, and the approximate place of the accident, called for the use of the track at times other than the approximate time of day of the accident, and for the use of the track at places other than the approximate place of the accident."

No reversible error is shown. That part of the answer as follows: "I have seen a good many of them come in and walk down to the bridge end and see the river," was responsive and material to the issues as we have indicated. We have again examined the Heidtmueller and Grauer decisions, and the foregoing is not in conflict therewith.

It is sufficient to say the several rulings have been considered, and no good purpose will be conserved by discussing the same in detail.

The application for rehearing is overruled.