THE CITY OF KANSAS CITY, KAN., v. GRACE FILE *et al.*

**No. 11009.**

1. JOINT TORT-FEASORS—*City and Light Company.* When an electric-light wire in a city breaks and falls down, and remains in the street for three weeks, constituting thereby a dangerous obstruction to travel, and causing injury to a passer-by, both the city and the electric-light company are presumed, from the lapse of time, to have knowledge of its condition and dangerous character, and both may be joined in an action for damages for injuries resulting from their negligent omission to cause the wire to be repaired. (DOSTER, C. J., dissenting.)

2. ——— *New Trial for One Only.* In an action for damages against two joint tort-feasors, the court may, after verdict against both, for good cause refuse a new trial to one while allowing it to the other.

Error from Wyandotte court of common pleas; W. G. HOLT, judge. Opinion filed January 7, 1899. Affirmed.

*T. A. Pollock*, city attorney, and *George B. Watson*, city counselor, for plaintiff in error.

*Dail & Bird*, for defendant in error. Grace File.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought by Grace File, a little girl, against the city of Kansas City, Kan., and the Consolidated Electric Light and Power Company, to recover damages for injuries sustained on account of the negligence of the defendants in allowing one of the conducting wires of the light company to break and fall to the street, and with which, while remaining in the street, and when charged with an electric current, she came in contact. While not pertinent to any legal aspect of the case, it is interesting to note that the broken ends of the wire

were about eighty feet apart, one of them lying upon the ground, the other suspended in the air, or possibly resting against one of the supporting poles. This breakage in the wire, as electricians explain, and as is common observation, destroyed the continuity of the circuit so far as the usual conducting medium was concerned. However, the electric current was on at the time of the little girl's injuries, and therefore must have been passing between the broken ends of the wire through the earth and the supporting pole spoken of, or through space without any visible conducting medium — a rare, if not hitherto unobserved, phenomenon, as experts stated. The plaintiff ignorantly and innocently took hold of the end of the wire lying upon the ground, and was severely and permanently injured by the consequent shock. A verdict and judgment were rendered in her favor. The defendants filed separate motions for a new trial. That of the electric-light company was sustained, that of the city overruled, and it, therefore, prosecutes error to this court.

The first claim of error and the one principally discussed is the misjoinder of the city and the light company as defendants. It is contended that the obligation of these two parties to prevent the electric wires from becoming obstructions or agencies dangerous to the people of the city proceeds from different sources; that no relations of contract or of public or municipal policy existed between them making the care of the wires a joint duty; that no obligation rested upon the city to inspect the wires of the light company or to superintend the business of lighting the streets so as to charge it jointly with the company for damages resulting from the latter's delinquencies.

We are constrained, however, to take a view of the rule of practice different from that taken by the city.

There is no question but that separate actions might have been maintained against the defendants and separate judgments recovered.   However, but one satisfaction could be had.   The policy of the code is to settle the whole subject-matter of any controversy in one action.   This rule of policy is collectible out of several of the sections relating to the joinder of parties and of causes of action.   Whatever may have been the rules of practice at common law, the code, which in legal as well as in equitable actions seeks the adjustment of interrelated controversies in a single suit, lends strong countenance to the joinder of defendants in such cases, if the plaintiff so elects.   But aside from the rules of the code, and going to the metaphysical question of relationship between the two defendants, there was a community of action, or rather of negligent omission, upon their part.   Each was under obligation to see that the electric wire in question did not fall down and remain upon the ground — the city because of the general oversight of its streets which the law requires it to take, the light company because of its obligation to prevent its property from becoming a dangerous menace to the public safety. If it be admitted that these obligations are different, or spring from different sources, they nevertheless concur to one end — to the end of avoiding, among other and similar consequences, just such injuries as the plaintiff sustained.   The concurring neglect of these respective obligations produced a single consequence and must therefore be viewed as joint and mutual.   The petition alleged that the wire in question broke and remained down for three weeks before the accident occurred.   This was time enough to charge the city, as well as the company, with knowl-

edge of its condition, and from which its concurrent disregard of its duty is plainly to be inferred. Inasmuch as the duty in question rested upon both city and company, and inasmuch as each possessed knowledge of the other's failure to discharge the obligation, it can be fairly said that each so concurred in the other's negligence as mutually and jointly with it to conduce to the plaintiff's injury.

Error is claimed because of the refusal of the court to grant a new trial to the city while allowing one to the light company. The case against the two defendants was of course tried as a single action. What the reason was for awarding a new trial to one while refusing it to the other is not satisfactorily shown by the record. Counsel in argument say the court thought that the evidence of the light company's ownership of the line of wire upon which the accident occurred was not satisfactorily established. If so, its action was justifiable. Be that as it may, no legal reason exists why a new trial might not be granted to one defendant and denied to the other. The plaintiff could have prosecuted actions against them separately and recovered separate judgments. Neither one had the right to insist upon the joinder of the other with it, and in fact, as already stated, the city objected to the joinder of the light company with it. Inasmuch as separate actions could have been maintained against each of the defendants, neither one of them had the right to insist that the other be retained in the case until final trial and judgment. The plaintiff in error in support of its position cites the cases of *Raymond v. Keseberg and another*, 83 Wis. 303, 54 N. W. 612; *Everroad et al. v. Gabbert*, 83 Ind. 489; and *Albright v. McTighe*, 49 Fed. 817. The reasoning of these cases, however, does not commend itself to us.

Many other claims of error are made. We have

carefully examined all of them, but do not find any of them well founded. The judgment of the court below is therefore affirmed.

JOHNSTON, J., and ALLEN, J., concurring.

DOSTER, C. J. (dissenting) : The views hereinbefore expressed upon the subject of joinder of defendants are those of my associates, not my own. I dissent from them. Ordinarily a mere question of practice is not of sufficient consequence to justify an expression of disagreement with the controlling view. Ordinarily there cannot be much concern how such questions are settled. The chief concern is to have them settled ; but I think I can foresee, as a result of the rule declared in this case, a confusion of procedure no less harmful in its consequences than those which would follow an erroneous decision upon a matter of substantive legal right. Besides, the error of the ruling made is so obvious that I feel it due to myself to disavow any part in its commission. The bare statement of the rule under consideration shows the mistaken application made of it. That rule is that *joint* tort-feasors may be united as defendants in an action. "Joint" is defined as "united ; combined ; done by, or between two or more unitedly ; shared by or between two or more." (Kinney's Law Dict.) "Combined ; united, done by or against, or shared between two or more persons in union." (Abbott's Law Dict.) "Joint trespassers" are defined as "persons who unite in the commission of a trespass." (Abbott's Law Dict.)

Tested by the above definitions, there was no relationship between the defendants in respect to the production of the injuries sustained by the plaintiff justifying their joinder. They *jointly* perpetrated no act of negligence. They *jointly* omitted no duty of

11—60 KAN.

diligence resting *jointly* upon them. Each one omitted an act of 'diligence resting upon it and it alone. The city omitted to discharge its duty to keep its streets free from dangerous materials or obstructions; the light company omitted to discharge its duty to keep its dangerous conducting wires out of the way; but the neglect of these duties, or this duty, was several, not joint, because the duty sprang from different sources. In the case of the city this duty grew out of the obligations assumed under the franchise to be a municipal corporation; in the case of the company it grew out of the obligation resting upon all persons so to use their own property as not to injure others. The duty in question had not been imposed upon the parties jointly either by statute or by common law. The agencies for its discharge were not under the joint control of the two parties. The city was not in partnership with the company in the business of lighting the streets, nor the company in partnership with the city in the business of municipal government. There was not, therefore, between them any community of mental design, any joinder of physical action, or any concurring lapse of mutual obligation.

Nor can the joinder be permitted upon the ground that the light company was the agent of the city, performing for it the work of lighting its streets. The rule is well established that the master cannot be joined with the servant, nor the principal with the agent, in suits for injuries growing out of the negligence of the servant or agent, unless the wrongful act or omission was by the command of the master or principal, or was thereafter ratified by him. The case of *Parsons v. Winchell and others*, 5 Cush. 592, is full to this point, and, indeed, I do not know of an opposing decision.

Upon the general question of the joinder of defendants in actions of tort, the authorities are uniform to the effect that, in order to justify their union, there must be some community among them in the wrongdoing for which they are sued; the injury must be in a proper sense their joint work. (Pomeroy, Rem., § 308; Bliss, Code Pl., § 83.) The case of *Trowbridge v. Forepaugh et al.*, 14 Minn. 133, is directly in point. In that case an abutting lot-owner in a city dug and left open a dangerous hole in the street, into which a pedestrian fell. Suit for the resulting injury was brought against the lot-owner and the city jointly — against the former in respect of his negligent act, and against the latter in respect of its obligation to care for its streets. The court held that a joint action could not be maintained because, as remarked, "the liability of the city depends on a state of facts not affecting its codefendant, and the converse. Neither is, in fact nor in law, chargeable with nor liable for the matter set up as a cause of action against the other. They did not *jointly* conduce to the injury."

The most forcible reason for the rule of joinder stated in the majority opinion is that, on account of the lapse of time between the breaking down of the wire and the injury to plaintiff, each of the defendants became chargeable with knowledge of the other's failure to repair the break or otherwise remove the danger, and thereby so concurred in, or, as it were, so adopted, the other's negligence as to assume with it a joint liability. I take it, however, that unless there was a joinder of mutual obligation in the first instance none could thereafter arise out of mere knowledge upon the part of each defendant of the other's delinquency. Knowledge by a person that a duty resting separately upon another has not been performed by

him cannot make the first-mentioned person liable with the other because the same duty likewise separately rests upon him. Joint liability in such cases must rest upon mutual obligation and not upon knowledge by each of the other's dereliction of duty.