(108 So. 388)

## WALKER v. ST. LOUIS–SAN FRANCISCO RY. CO. (6 Div. 412.)

(Supreme Court of Alabama. April 8, 1926. Rehearing Denied May 6, 1926.)

**1. Appeal and error ⬅933(1)—Same inferences and presumptions are indulged in favor of trial court's granting, as refusal, of new trial.**

Same inferences and presumptions are indulged in favor of trial court's action in granting, as in refusing, motion for new trial, whether or not he assigns proper reason.

**2. Master and servant ⬅333—Verdict for servant, sued jointly with master for former's misfeasance or malfeasance, entitles master to have verdict against him set aside.**

When master, liable for servant's conduct under doctrine of respondeat superior, is sued jointly with servant for latter's misfeasance or malfeasance, verdict for servant entitles master to have verdict against him set aside.

**3. Appeal and error ⬅933(4)—Granting of railway company's motion for new trial after general verdict against it, notwithstanding verdict for engineer, will not be reversed on ground that jury may have found for plaintiff on count charging wanton misconduct of other servants.**

Where jury found general verdict against railway company, sued jointly with engineer for death of plaintiff's decedent, and there was no instruction not to find against railroad, unless jury also found against engineer, granting of its motion for new trial will not be reversed on ground that jury may have found for plaintiff on count charging wanton misconduct to other servants than engineer.

Thomas and Bouldin, JJ., dissenting.

Appeal from Circuit Court, Walker County; Ernest Lacey, Judge.

Action by Myra Walker, as administratrix of the estate of J. Duffie Walker, deceased, against the St. Louis–San Francisco Railway Company and Joseph Houppert. From a judgment granting the railway company a new trial, plaintiff appeals. Affirmed.

Harsh, Harsh & Harsh, of Birmingham, and Curtis, Pennington & Pou, of Jasper, for appellant.

Where a count charges two defendants with a joint tort, and the evidence shows that only

---

one was guilty, a verdict can be rendered against one without the other. A. C. L. v. Carroll, 208 Ala. 361, 94 So. 820; Sou. Ry. Co. v. Arnold, 162 Ala. 570, 50 So. 293. After a verdict against the master, who was shown to be liable by the evidence, the master has no cause to complain because the verdict of liability does not also include the servant jointly sued. Ill. Cent. v. Murphy, 123 Ky. 787, 97 S. W. 729, 11 L. R. A. (N. S.) 352; St. L. & S. F. R. Co. v. Sanderson, 99 Miss. 148, 54 So. 885, 46 L. R. A. (N. S.) 352. When there is evidence of negligence on the part of the corporation through other sources than the individual defendant, a verdict and judgment against the corporation defendant is proper, though the individual defendant is not held liable. The verdict may be referred to count 4. Webster v. Chicago, etc., R. Co., 119 Minn. 72, 137 N. W. 169; Clay v. Chicago, etc., R. Co., 104 Minn. 1, 115 N. W. 949; Donald v. A. C. L. R. Co., 117 S. C. 4, 108 S. E. 180. The presumption in favor of the correctness of the trial court's ruling does not go to the extent of overcoming matters affirmatively appearing of record to the contrary. Cook v. Sheffield Co., 206 Ala. 625, 91 So. 473. Failure of defendant to request charges applying the principle of respondeat superior, and no verdict against the master without a verdict against the servant, deprived the court of the right to set aside the verdict against the master alone. Ill. Central v. Murphy, supra; Broadway Coal Min. Co. v. Robinson, 150 Ky. 707, 150 S. W. 1005; Stuart v. Standard Oil Co., 211 Mo. App. 345, 244 S. W. 970; Whitesell v. Joplin R. Co., 115 Kan. 53, 222 P. 133; De Sandro v. Missoula L. Co., 48 Mont. 226, 136 P. 711; Southern R. Co. v. Arnold, supra.

Bankhead' & Bankhead, of Jasper, for appellee.

In an action against a railroad company and its servant to recover damages solely in consequence of the servant's misfeasance, where the verdict finds the servant not liable, but finds in favor of plaintiff against the railroad company, such verdict should be set aside and a new trial granted. Southern R. Co. v. Harbin, 135 Ga. 122, 68 S. E. 1103, 30 L. R. A. (N. S.) 404, 21 Ann. Cas. 1011; French v. Central Con. Co., 76 Ohio St. 509, 81 N. E. 751, 12 L. R. A. (N. S.) 669, 118 Am. St. Rep. 891; Sup. Lodge v. Gustin, 202 Ala. 246, 80 So. 84.

ANDERSON, C. J. The plaintiff recovered a judgment in the court below, and the trial court granted defendant's motion for a new trial, and the plaintiff appeals.

[1] It is well settled that, when the trial court grants a motion for a new trial, the same inferences and presumptions in favor of his action in doing so are indulged as would be in case he refused a motion for new trial, and this is so whether he assigns the proper reason for doing so or not.

[2] It is settled law by the decisions of a majority of the states as well as the United States Supreme Court that, when the master is sued jointly with his servant for the misfeasance or malfeasance of said servant, and is liable for the conduct of said servant under the doctrine of respondeat superior, a verdict in favor of such servant entitles the master to have the verdict against him set aside. A Supreme Lodge v. Gustin, 202 Ala. 246, and numerous cases cited on page 252, 80 So. 84. Therefore, as the second count was against the defendant railroad and its engineer, and whose negligence was the gravamen of the action, and the jury found against the railroad and acquitted the engineer, it was the duty of the trial court to set aside the verdict upon a proper motion.

The case of A. C. L. R. R. v. Carroll, 208 Ala. 361, 94 So. 820, is in no wise in conflict with the authority above cited and cases referred to in said Gustin Case. There the suit was against the railroad, the town of Ozark, and Dowling, the agent of said town, who was the superintendent of its electric plant. Dowling testified that he strung the wires connecting the depot of the railroad with the town wires, and at the request of the railroad, but without cost. This in no sense made him the agent of the railroad, as he was doubtless doing this to get a customer for the light plant, but, conceding that he was an agent of the railroad, it was only temporary, and for the limited purpose of stringing the wires, and it terminated when this was done. A careful reading of the complaint will disclose that as against the railroad it does not proceed upon any negligence of Dowling in stringing the wires, but upon the negligence of the servants of the railroad in subsequently permitting said wires to get in a dangerous condition. The proof also showed that what negligence that was chargeable to the railroad grew out of conditions which arose subsequent to the stringing of the wires, and we held that the discharge of Dowling was not an act of which the railroad could complain. Had Dowling been the agent through whom liability was placed on the town of Ozark, the town should have been discharged, but said town did not even appeal.

[3] It is insisted, and brought out in the opinion of Justice THOMAS (now the dissenting opinion), that the action of the trial court should be reversed, for the reason that the jury may have found for the plaintiff under count 4, which charged wanton misconduct to a servant or servants other than the engineer. As we understand, inferences and presumptions should be in favor of the trial court, and should not be indulged for the purpose of a reversal. Had the jury specified count 4 in their verdict that would have excluded count 2, but the jury found a general verdict. Moreover, the record fails to disclose a written or oral instruction inform-

ing the jury that they could not find against the railroad, unless they also found against the engineer, and it would be a rather violent presumption that the verdict was based on count 4 alone.

In this discussion we do not wish to hold or intimate that there was sufficient evidence to take the case to the jury under count 4 upon the idea that the fireman was guilty of wanton misconduct.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE, SOMERVILLE, GARDNER, and MILLER, JJ., concur.

THOMAS, J. (dissenting). The suit by an administratrix for the wanton injury and death of her intestate was against the defendant corporation and the engineer in charge of the engine causing the injury.

The first, third, and fourth counts charged both defendants with liability as joint tortfeasors, without specific reference therein to the doctrine of respondeat superior. Count 1, for simple negligence, was eliminated by the charge of the court. Count 2 was for the subsequent negligence of the engineer after discovery of the peril of the said intestate. The action of the court was not invoked by defendant to apply the principle of respondeat superior insisted upon in the motion for new trial; this count being susceptible to the doctrine. The general affirmative charge No. 23 was refused. The verdict, being in favor of the engineer, was therefore not rested upon count 2. The third count charges the "defendants wantonly and wrongfully caused or allowed" said engine to run upon or against or strike plaintiff's intestate, etc. The defendant corporation did invoke the doctrine as to this count in charge 46. However, the count was eliminated as to the corporation by given charges 58 and 60.

Count 4 charges each defendant with being a joint tort-feasor in causing the injury and death through a servant or agent "of defendants acting within the line and scope of his authority as such servant or agent of defendants wantonly and wrongfully * * * allowing said locomotive engine to run upon or against or strike plaintiff's intestate," etc. Affirmative charges were requested and refused as to this count—12 to 17, inclusive. Charge 33, requested by defendants, "You are instructed that you cannot consider whether the fireman was looking or not looking under count 4," was refused. The foregoing charges are to be considered in connection with the assigned reason for the new trial: "that the court having [had] refused defendants' requested charges asserting said principle of law and the jury having [had] found the defendant railway company guilty and its engineer Houppert not guilty," etc.

The case was submitted to the jury on counts 2 and 4, and resulted in a verdict for plaintiff against the St. Louis-San Francisco Railway Company, and no reference was made to the other defendant. The effect of this verdict was a finding of not guilty as to the engineer. Burgin v. Sugg, 210 Ala. 142, 97 So. 216; Wilder v. Bush, 201 Ala. 21, 75 So. 143; Flack v. Andrews, 86 Ala. 395, 5 So. 452; Clinton Co. v. Bradford, 200 Ala. 308, 76 So. 74. And the judgment for costs as to the defendant Houppert was duly rendered against plaintiff. Handley v. Lawley, 90 Ala. 527, 8 So. 101.

On motion of the defendant railway company, the judgment against it was set aside, and a new trial was granted; the assigned reasons being:

" * * * The court is of the opinion that, inasmuch as the evidence showed without conflict that plaintiff's cause of action, at least in so far as it was presented by counts 2 and 3, was based upon the alleged wrongful or negligent act of the defendant Houppert committed while acting within the scope of his authority as engineer for the defendant St. Louis-San Francisco Railway Company, there could, according to the authorities cited in paragraph 18 in the case of Supreme Lodge Loyal O. of M. v. Gustin, 202 Ala. 246, 80 So. 84, be no recovery as against the railway company, unless there was also a recovery against the other defendant, said engineer, and, the court having refused defendant's requested charges asserting said principle of law, and the jury having found the defendant railway company guilty, and its engineer Houppert not guilty, it is therefore ordered and adjudged by the court that the judgment of the court and the verdict of the jury rendered against the defendant St. Louis-San Francisco Railway Company, in the above-entitled cause be, and the same are, set aside, and that said St. Louis-San Francisco Railway Company be, and it is, granted a new trial of this cause."

It has been declared that, where a count charges (in an action ex delicto) several defendants with a joint tort, and the evidence supports the count that one, or a less number of defendants than is charged, is found to be guilty, a verdict so rendered will be sustained. Southern Ry. Co. v. Arnold, 162 Ala. 570, 575, 578, 50 So. 293; Supreme Lodge, etc., v. Gustin, 202 Ala. 246, 80 So. 84; Wright v. Sample, 162 Ala. 222, 50 So. 268; Strickland v. Wedgeworth, 154 Ala. 654, 45 So. 653; Witcher v. Brewer, 49 Ala. 121, 122; Northern Ala. Ry. Co. v. Mansell, 138 Ala. 548, 36 So. 459; Lovelace v. Miller, 150 Ala. 422, 43 So. 734, 11 L. R. A. (N. S.) 670, 14 Ann. Cas. 1139. See Wright v. McCord, 205 Ala. 122, 88 So. 150; Roman v. Dreher, 1 Ala. App. 429, 55 So. 1015. The case of Torrey v. Forbes, 94 Ala. 135, 139, 10 So. 320, as to a discontinuance, has been qualified and explained by the foregoing decisions, and was expressly overruled in Strickland v. Wedgeworth, 154 Ala. 654, 45 So. 653. See Crawford v. Mills, 202 Ala. 62, 79 So. 456.

Plaintiff's intestate was killed at Dora by a train of the railway company operated by defendant Houppert as locomotive engineer. The train was a passenger train moving at a high rate of speed from Birmingham to Memphis, and, while intestate was walking along the track in the same direction the train was going, he was struck and killed. The train had just emerged from a cut, and was on a curve. The engineer was on the right side. Intestate had walked along a path or trail on the left side of the track, and stepped on the track ahead of the train, and the engineer testified that he could not see him from his side of the engine because of the position and height of the engine and the sharp curve in the track. The question of the frequency of use of the path at that point was in conflict, as was the question of signals of approach.

The concession is properly made that, where a complaint charges two defendants with a joint tort, and shows on the face of that pleading that one is the master and the other is the servant acting alone for the master, and that the master had no connection with the negligence, except through that servant, made a joint defendant with the master, the master would be entitled to a charge that, unless the jury find that the servant was guilty of the negligence charged, the jury could not find the master liable. However, after the verdict against the master, who was shown to be liable by the evidence, the latter has no cause of complaint, because the verdict of liability did not also include the servant. That is to say, when a count of a complaint charges more than one person with a joint negligence, without averments sufficient to invoke the rule of respondeat superior (even though it is shown that there was a field for the operation of said rule), and the jury returned a verdict against the employer defendant, that was liable solely through that rule for the negligence of the other, the meritorious complaint under such a finding is that of the plaintiff, and not the defendant against whom the judgment was rendered. The reason for such decisions is that such finding alone did not conclusively show that there was insufficient evidence to sustain the verdict rendered against the employer defendant. A. C. L. R. Co. v. Carroll, 208 Ala. 361, 94 So. 820.

In Illinois Cent. R. Co. v. Murphy's Adm'r, 123 Ky. 787, 798, 97 S. W. 729, 732 (11 L. R. A. [N. S.] 352) it is said:

"* * * We are so clearly convinced that there was actionable negligence by the company in the manner of the running of the train at that point, and under the circumstances proven, that the verdict of the jury, though based on less substantial grounds, ought not to be disturbed.

"It does not follow that the same verdict need have been rendered against the company and its engineer. We can think of cases where possibly the engineer ought to be held to the stricter account, and vice versa; but, let that be as it may, if the plaintiff is entitled to his verdict against two tort-feasors, but the jury are able to agree only as to one of them, and gives a verdict accordingly, we know of no law that prevents the plaintiff from having at least what the jury has given him. If he failed to get the verdict against another also liable, the plaintiff may be aggrieved, but not the defendant." Stuart v. Standard, etc., Co., 211 Mo. App. 345, 244 S. W. 970; Broadway Coal Min. Co. v. Robinson, 150 Ky. 707, 150 S. W. 1000; M., H. & E. R. R. Co. v. Owen, 147 Ky. 1, 143 S. W. 421.

This rule is adhered to in Texas. Texas & P. R. Co. v. Huber (Tex. Civ. App.) 95 S. W. 568, 570; Railway v. James, 73 Tex. 12, 10 S. W. 744, 15 Am. St. Rep. 743. It is said that a motion for arrest of judgment ought not to have been sustained because the verdict was in favor of the agent as being free from negligence, and, he being the agency through which the railway committed the negligence, that, although "such a verdict has the appearance of being based on inconsistent and contradictory findings of the jury, this is not of itself enough to require the reversal of a judgment against the passive defendant; the reason being that the finding in favor of the defendant, whose act constitutes the negligence complained of, and the finding against the other in the same case by the same jury, can be attributed to improper conduct of the jury in arbitrarily exonerating the former, and not necessarily to a finding that there was no negligence on his part. It has often been held that, where the servant or agent who was the real and active wrongdoer has been sued and a judgment has been rendered in his favor, it will be a bar to a judgment against the employer or principal. This rule is not deemed to be applicable where the verdict in favor of the agent or servant nevertheless bears intrinsic evidence that the jury found that the wrongful act complained of had been committed by the agent or servant." Texas & P. R. Co. v. Huber (Tex. Civ. App.) 95 S. W. 568, 570.

The Kansas court said of this situation after verdict:

"* * * The effect of the verdict is the same as though separate actions had been commenced, one against the company, and one against the motorman. A somewhat similar situation existed in Kansas City v. File, 60 Kan. 157, 159, 55 P. 877, where a new trial was granted as to an electric light company, but denied as to the city in an action that had been commenced and was tried as to both. If, in the present situation, separate actions had been commenced, a verdict in one case could not have been used for any purpose in the trial of the other. The instructions probably resulted in the jury erroneously failing to return a verdict against the motorman. Of that the street railway company cannot reasonably complain. Kansas City v. File, 60 Kan. 157, 159, 55 P. 877." Whitesell v. Joplin & P. Ry. Co., 115 Kan. 53, 54, 222 P. 133, 134.

The Mississippi court declared, through Mr. Justice Whitfield, that—

"The only remaining defense is the technical one, founded in the rules of pleading and practice, to wit, that the verdict and judgment exonerating the conductor necessarily and logically resulted inevitably in the exoneration also of the master. The reasoning is that the master can only be responsible, in a case like this, because the servant is, on the doctrine of respondeat superior. It is said with great ingenuity and ability that the master can only be derivatively liable; that is, he is liable, if at all, only because of the act of the servant, when that act makes the servant liable, and a verdict, as in this case, for the conductor, and against the defendant, is inconsistent, irregular, and illogical. The Texas Supreme Court, in Railway Co. v. James, 73 Tex. 12, 10 S. W. 744, 15 Am. St. Rep. 743, which was a case exactly like this, admitted that the verdict was apparently inconsistent, yet nevertheless said it presented no ground on that account for a reversal of a judgment against the company.

"In the case of Railroad Co. v. Clarke, 85 Miss. 697, 38 So. 97, this court followed the Texas Supreme Court, and rested its judgment on two grounds: First, that if it were assumed in such case that the company and its servant were jointly liable, neverthless the right of action which the plaintiff had was both joint and several, and that, though both were equally liable, the liability was based on distinct and different legal principles—the servant because of his personal trespass, and the company because of its failure to discharge its nondelegable duty towards the public regarding its custody and management of its dangerous instrumentalities, or, as here, in not having a competent conductor. And the court rests its judgment in the second place on our statute (section 4944 of the Code of 1906; section 4378 of the Code of 1892), which is in the following words: 'In all cases, civil and criminal, a judgment or decree appealed from may be affirmed as to some of the appellants and be reversed as to others; and one of several appellants shall not be entitled to a judgment of reversal because of an error in the judgment or decree against another, not affecting his rights in the case. * * *'" St. Louis & S. F. R. Co. v. Sanderson, 99 Miss. 148, 162, 54 So. 885, 888, 889 (46 L. R. A. [N. S.] 352).

The Mississippi statute referred to bears a strong similarity to the rule obtaining in this jurisdiction. Crawford v. Mills, 202 Ala. 62, 79 So. 456; Acts 1915, p. 605.

In A. C. L. R. Co. v. Carroll, 208 Ala. 364, 94 So. 823, this court said:

"Whether the trial court erroneously or not gave the general charge in favor of B. C. Dowling, one of the defendants, is a point as to which this appellant cannot complain, as it could have been sued jointly or separately, and could be made liable for the entire judgment. Acts 1915, p. 605. The cases of Mayer v. Thompson, 104 Ala. 611, 16 So. 620, 28 L. R. A. 433, 53 Am. St. Rep. 88, and Luling v. Sheppard, 112 Ala. 588, 21 So. 352, cited in brief of counsel, merely hold that an agent who commits a tort for his principal cannot escape personal liability because acting for another who would be liable for his acts. They do not hold that the plaintiff could not recover against this appellant notwithstanding his failure to recover, through error or otherwise, against Dowling."

The testimony in this last case showed that Dowling was acting for the Atlantic Coast Line Railroad, though a city official.

The common-law rule was abolished in this state by the remedial procedure prescribed by the act of September 18, 1915 (Acts, p. 605), which gives the right of amendment as to parties at any time, and provides that "the plaintiff may recover such judgment as he may be entitled to against any one or more of the defendants." Crawford v. Mills, 202 Ala. 62, 79 So. 456. Aside from this, the homicide statute is penal. Ala. Power Co. v. Stogner, 208 Ala. 666, 95 So. 151. And the rule as to different verdicts according to the evidence is approved in considered cases we have indicated. In the opinion of the writer, the foregoing demonstrates the error in granting the new trial, even though the verdict be rested on count 2. If the acquittal as to the engineer, a defendant charged with the failure of and as a party to a duty in count 2, be taken as an acquittal as to that count, the verdict may properly be rested on count 4.

Thus we are brought to a consideration of the evidence under that count. It is the duty of a railroad company, operating a train through a city, town, or village, not only to perform the statutory duty of blowing a whistle or ringing a bell at short intervals while entering into or moving through such city, town, or village, but to keep a lookout ahead while so moving, and, if the engineer is not in position where he can see, it follows that this duty must be performed by the fireman, or some one else. St. L. & S. F. Ry. Co. v. Dennis, 212 Ala. 590, 103 So. 894, 897; Illinois Cent. R. Co. v. Martin, 213 Ala. 617, 105 So. 805; Grauer, Adm'r, v. A. G. S. R. Co., 209 Ala. 568, 96 So. 915; A. G. S. R. Co. v. Grauer, 212 Ala. 197, 102 So. 125; A. G. S. R. Co. v. Guest, Adm'r., 136 Ala. 348, 34 So. 968; Southern Ry. v. Stewart, 179 Ala. 304, 60 So. 927; S. & W. R. R. Co. v. Meadors, 95 Ala. 137, 10 So. 141; C. & W. R. Co. v. Wood, 86 Ala. 164, 5 So. 463; Haley v. K. C. M. & B. R. R. Co., 113 Ala. 640, 642, 21 So. 357.

The jury's verdict referred to count 4, ascertained and declared that the defendant's other employee in service on the engine was required to discharge the duty, at the time, place, and in the circumstances of keeping a proper lookout, and to observe other due precautions to prevent injury to those of the general public who might in all reasonable probability be exposed to the danger of the rapidly on-coming train, and that verdict against the defendant corporation further ascertained and declared the employer liable' in fact and in law for a failure of such duty

under the circumstances that directly resulted in the death of intestate.

The case cited by the trial·court (202 Ala. 246, 80 So. 84) is not contrary to the general authorities we have considered above. The ·reversible error declared in Gustin's Case was the refusal to charge the jury at the request of the Supreme Lodge of the World, who acted, if at all, only through the Birmingham Lodge named in the charges, as follows:

"If the jury believes from the evidence that the Birmingham Lodge No. 432, Loyal Order of Moose, were not negligent in and about the death of the plaintiff's intestate, the court charges you that you cannot find a verdict against the Supreme Lodge of the World, Loyal Order of Moose.

"'The court charges the jury that, if, under the law and the evidence in this case, the Birmingham Lodge, No. 432, Loyal Order of Moose, has not been shown to have been guilty of negligence in and about the alleged death of the plaintiff's intestate, I charge you that the Supreme Lodge of the World, Loyal Order of Moose, would not be liable.' "

They merely ·sought to apply the doctrine that, if two defendants are sued jointly, and it appears from the evidence that one, if liable at all, is liable only through the other defendant, then the jury should be charged, at the request of the former defendant, that, unless negligence is shown by the latter, the former could not be held liable. It may be conceded that, if the predicate of the charge is true, there is no basis of liability. This is different from the instance that, though the representative is guilty of negligence in such sort as to bind the principal, the principal cannot be held, no matter how complete a case is made out against the principal, because the jury fails to find against the representative. That the Gustin Case, 202 Ala. 246, 80 So. 84, has this meaning appears from the opinion, saying that a majority of the judges "are of the opinion that the refusal of these charges was error, for which the judgment must be reversed." That this was the decision further appears in the dissent of Justices Somerville and Gardner, because they were of the opinion that the charges, though correct, were not reversible error, because the law has been substantially and fairly given to the jury in the court's general charge, and for the further reason that in their opinion there was some evidence tending to show that a certain person named Rogers, the supreme instructor, in giving approval to the form of initiation employed causing the death of intestate, was negligent—contributed to the death.

We have observed that count 4 does not charge the negligence solely to the defendant's engineer Houppert, but on the servants or·agents, etc. Under the evidence there was a tendency, or inference, of negligence charging the defendant employer other than that

shown against its engineer Houppert. As the train proceeded at a rapid rate through the town of Dora, and where the track was that of a curve, or a reverse curve, the engineer was in his place on the right side of the engine (and on the inner side of the curve in the track) and a distance of about 40 feet from the front of the engine. The engineer could not at all times at that place see to the other side of the engine and its immediate proximity, unless the track and engine is so that the latter is pointed as not to obscure his vision. This is by reason of its height and length of its boiler—or the front part of the engine being tall and long and the curve in the track as indicated by the engineer as a witness. The fireman was not a witness, yet the engineer showed him to have been on the left side of the engine, in his place, and on the outside of the curve of the track. His lookout to the front was not so obscured as was that of the engineer. The evidence showed that the deceased was walking on that side, the south side, of the track as related to the curve, and in close proximity, not noticing the approach of the train, and had his head down, and that he had so proceeded for about 200 feet. There was conflict in the evidence as to whether the usual or required signals were given as the train proceeded at speed through the town of Dora where people frequent in numbers. The evidence shows that the fireman discovered the deceased, or object collided with, for that he gave immediate notice to the engineer of such injury, and did not give notice before that impact and injury. The engineer immediately stopped the train and discovered the injury to plaintiff's intestate. There is no positive evidence that the fireman was keeping watch and lookout preceding and before the moment of impact.

The engineer, as a witness for defendants, thus states the situation as to himself and the fireman: That he was keeping a lookout ahead constantly from the time he left that road crossing until he struck this man; that he was sitting on the seat box, looking ahead, along the track; that there was a reverse curve in that track between the road crossing and the depot. "That is between the last road crossing towards Birmingham from Dora and the point where I struck Mr. Walker." He stated that the track "curves to the left at the road crossing at Dora." As to how far that left curve extends toward Dora from the road crossing witness did not know. His best judgment was "about 150 feet. It starts again and curves to the right, and curves back again to the left;" that the second curve was "about 100 feet." Witness was "keeping a lookout ahead all the time. There was no obstruction except my engine between the crossing and the depot. * * * You can see the far. end of the depot from the crossing. * * * I judge the double reverse curve would be about 650 or 700 feet

from the time you leave the road crossing until you get to the depot." He then states as to the fireman:

That he was a man named Tribble; that witness "did not know whether he is here. * * * I couldn't say as to whether the fireman was keeping a lookout. * * * I suppose he was." "You ask whether or not it was his duty to keep a lookout coming through that town? I answer, No, sir; he don't have to set up there and look out. He is supposed to keep the engine hot. You ask whether he was familiar with the road? I answer, He had been running over this same place for a year or two, two years, maybe. *We had no other lookout besides myself and the fireman.* [Italics supplied.] You ask, What was the fireman doing at that time? I answer, Well, I was looking; I couldn't exactly say. * * * I was working steam all the way through Dora. I wasn't increasing my speed. * * * I was running between 25 and 30 miles an hour. * * * I couldn't say whether the fireman was firing up at that time. As to whether I could tell whether he was firing without seeing him, I answer, He might have been sweeping the deck off. You ask whether I have to see the fireman to know whether he is firing? I answer, If I was looking at him, I could tell, I wasn't. I would have to look at him to see whether he was firing. You ask whether I couldn't hear and feel it? I answer, Well, lots of times he will open the door, and you can't tell whether he is putting in coal or not. *On that occasion he wasn't putting in coal.* [Italics supplied.] You ask, Well, he could not be firing? I answer, *I wasn't looking.* [Italics supplied.] You have to have the door open to fire, and you have to close it right after putting the fuel in. I don't know positively whether he was opening or closing the door."

If the scene of the injury had been in the country, and where the same was not a populous place or territory, or at a time when a sharp lookout was not required by the known facts, this failure of those ordinarily charged with the duty of keeping watch would be effective against the charge of negligence or wantonness on the part of the fireman. However, under the evidence as to the time and place of a large and populous community, the speed of the train, and its character as obstructing the track at curves, it could not be said as a matter of law that negligence and culpability may not be imputed to the fireman in view of the inability of the engineer situated as he was to duly keep the lookout. This fact was recently adverted to in Illinois Cent. R. Co. v. Martin, 213 Ala. 617, 105 So. 805. It is there said of the general duty of the fireman in the same community and place where the use of the tracks by pedestrians had been so long continued that the trainmen accustomed to operate trains were presumed to know the condition dangerous to pedestrians walking on along or by the tracks; that it was not controverted that the engineer and fireman operating the locomotive which caused the injury were informed of the conditions. Such are the facts here. The locations of the tracks, public road, or street, the path of pedestrians, are the same. The fact that the fireman immediately reported the injury or impact was some evidence, or from which an inference may be drawn, that he was looking ahead, saw intestate as or immediately before he was struck. It is aptly observed in the Illinois-Martin Case, supra, that—

"One of the precautions or duties imposed upon trainmen in passing a point known by them to be in such continuous use as a passway by pedestrians that some one is likely to be in a position of danger, is to keep a lookout. If a curve in the track cuts off a proper lookout by the engineer, the duty devolves upon the fireman. If obstructions interfere, other precautions, such as reducing speed or giving warning signals, should be taken. The duty of keeping a lookout under such conditions applies to trespassers. To run at a high rate of speed through such zone without keeping a lookout may evidence such conscious disregard of duty in the face of known danger to life as that the jury may infer wantonness.

"Under the evidence above outlined, if the presence of the plaintiff dangerously near or on the track was never discovered by either the engineer or fireman, it became a question for the jury whether a proper lookout was being kept, notwithstanding their testimony."

It is shown by the evidence that the locus in quo of the injury, and the conditions thereof at the time and place, the speed of the train, whether or not signals were given, the position of the engineer in the engine, the footpath along the way, the condition of the track and front of the engine thereon, and the position of the intestate when struck, were known to the fireman. And if under these circumstances he failed in his duty in the premises and the due operation of the engine at the time and place, and in keeping a lookout upon the curve where the engineer could not fully do so, then a jury question of wanton injury to an invitee or to a trespasser would have been presented. A. G. S. R. Co. v. Guest, Adm'r, 136 Ala. 352, 34 So. 968; Grauer v. A. G. S. R. Co., 209 Ala. 568, 96 So. 915; Id., 212 Ala. 197, 102 So. 125. It is the fact of such use of the track at the time and place that raised the duty to keep a lookout on the part of such employees who knew the conditions and the danger.

The fact that the train may not have been brought to a full stop after discovery of the peril of intestate is no answer for a failure of duty. Had the engineer been informed by vision or by the fireman keeping a proper lookout, a signal or diminution of speed of the train may have saved the life of intestate by putting the latter to preventive effort. L. & N. R. Co. v. Calvert, 172 Ala. 597, 602, 55 So. 812; Southern Ry. Co. v. Gantt, 210 Ala. 383, 98 So. 192; A. G. S. R. Co. v. Sanders, 203 Ala. 57, 82 So. 17; Thompson v. M. & O. R. Co., 211 Ala. 646, 101 So. 441; A. G. S. R. Co. v. McWhorter, 156 Ala. 269, 47 So. 84; A. G. S. R. Co. v. Fulton, 144 Ala.

332, 39 So. 282; L. & N. R. Co. v. Jenkins, 196 Ala. 136, 72 So. 68.

Under this pleading indicated and the evidence, the cases collected in Karges Furniture Co. v. Amalgamated Woodworkers Local Union No. 131, 165 Ind. 421, 75 N. E. 877, 2 L. R. A. (N. S.) 794, 6 Ann. Cas. 829; 30 L. R. A. (N. S.) 404, note, where the servant named as defendant alone committed the wrong complained of, and the master made a party merely because of the doctine of respondeat superior, are not pertinent.

The case of Fields v. Williams, 91 Ala. 502, 8 So. 808, is not to a different effect than the conclusion we have announced. It was merely that in a suit against joint trespassers the judgment must be for a single sum against the defendants as to whom a verdict is returned.

The decision of National Baking Co. v. Wilson, 198 Ala. 90, 73 So. 436, on proper pleading in assault and battery by an agent, is not contrary to the foregoing. In the case of Cent. of Ga. Ry. Co. v. Carlock, 196 Ala. 659, 72 So. 261, for false imprisonment, the complaint was against the master and the agent under the rule of respondeat superior, and the cause of action was properly stated as to one defendant and not as to the other, and it was held not sufficient to support a judgment.

And in Crescent Motor Co. v. Stone, 208 Ala. 137, 94 So. 78, the question was that of the charge of a joint servant or agent of the defendant, and it was declared that to sustain this averment the proof must have tended, at least, to show that the servant or agent causing the injury was a joint agent or servant of the three defendants. If such variance be applied to the instant count, it is sufficient to say that, under the rule (175 Ala. xxi), the court was not informed of the variance when the affirmative instruction was requested. That this is a mere variance and not a failure of proof is shown in Southern Ry. Co. v. Arnold, 162 Ala. 570, 578, 50 So. 293, 295, where it is said:

"There is no merit in the contention of a variance between the allegations and the proof. It is a well-settled rule of law that in actions of tort against two or more defendants jointly, where the proof fails as to any one, a verdict may be rendered against the other or others as to whom the proof is sufficient without thereby in law constituting a variance."

In the case of Warner-Smiley Co. v. Cooper, 131 Ala. 297, 31 So. 28, there was held to be a variance between the averment in the complaint that a partnership was composed of N. & S., and the proof that it was composed of N., S. & S. In the case of Northern Alabama Ry. Co. v. Mansell, Adm'r, 138 Ala. 548, 36 So. 459, where the averment was that the plaintiff, when injured, was employed by two defendants, and the proof showed that he was then employed by one of the said defendants, it was held a mere variance. So, also, in Carter v. Shugarman, 197 Ala. 577, 73 So. 110; Bowdoin v. Ala. Chem. Co., 201 Ala. 582, 79 So. 4. This is exactly the case before us, where a like variance is presented —where the affirmative instruction was requested and the court was not informed, under the rule, that the request was for such a variance. Had the rule been complied with, the variance could have been met by amendment of the complaint. This is the reason for the rule. This was the rule of Hobdy v. Manistee Mill Co., 156 Ala. 308, 47 So. 69; Dean v. E. T., V. & G. Ry. Co., 98 Ala. 586, 13 So. 489; McGhee v. Drisdale, 111 Ala. 597, 20 So. 391. In Hackney v. Perry, 152 Ala. 626, 634, 44 So. 1029, 1031, it is said:

"The principle is well established and recognized that in actions for tort, as a general rule, where two or more are jointly sued as defendants, according to the proof, a recovery may be had as to all, or any number less than all. But this rule is not without its exception, as, for instance, where the action is in case for a negligent performance of, or a negligent failure to perform, a duty arising out of a contract, whereby injury and damages result. In such a case the averment of the contract from which the alleged duty springs is made a material allegation of the complaint, which must be proven as charged, or else there is a fatal variance between the allegation and the proof."

The rules that are pertinent are: (1) Where there is a variance between the allegations and proof "which could be cured by an amendment of the pleading," the trial court will not be put in error, unless specific information or informing ground be stated in the objection to the admission of testimony or affirmative instruction provided thereon (rule 34); and (2) when the general charge is requested predicated upon proof of time, venue, "or any other point not involving a substantive right of recovery or defense, or because of some immaterial omission in the evidence of the plaintiff or defendant," the trial court will not be put in error for refusing said charge, unless the point upon which that charge was requested was brought to the attention of the trial court before the argument of the case was concluded (rule 35). The reasons for the respective rules are found in the provisions, viz.: (a) "Which could be cured by an amendment of the pleading," giving the opportunity to make the allegata and probata correspond; and (b) that the omission in the evidence, "not involving a substantive right," may be permitted to be given in evidence upon terms subject to the exercise of a reasonable discretion of the court. In the case of Malone Motor Co. v. Green, 213 Ala. 635, 105 So. 897, the substantive right of recovery in a suit in case was the crux of that decision. In this may be found the distinction, if any, between a fatal

variance and a failure of proof that prevents a recovery.

The averment was descriptive of the contract of·insurance, and treated as a variance in U. S. H. & A. Ins. Co. v. Savage, 185 Ala. 232, 64 So. 340. The variance was the description in complaint as a sidewalk, and the proof disclosed that the subject of complaint was not on or over the sidewalk in City of Birmingham v. Carle, 191 Ala. 539, 550, 68 So. 22, L. R. A. 1915F, 797. The introduction of the Georgia statute was held to present no variance in Southern Ry. Co. v. Jordan, 192 Ala. 528, 68 So. 418. The complaint charged that the injury was caused by the negligence of one Huey (the agent of defendant), who had charge of the "locomotive," and the evidence showed that he had charge of an "electric motor," etc., in Woodward Iron Co. v. Steel, 192 Ala. 538, 68 So. 473, and it was held to be variance. Where the "claimants" claimed the property as individuals, and the proof showed their title was held in their respective capacities as a committee of the creditors, it was treated as a variance in Bickley v. Porter, 193 Ala. 607, 610, 69 So. 565; and as receiver in Ferrell v. Ross, 200 Ala. 90, 75 So. 466; as director general in Davis v. Dawkins, 209 Ala. 45, 95 So. 188; and Director General v. Bright-Eidson & Co., 209 Ala. 297, 96 So. 203; or where the charge was an unknown superintendent in Woodward Co. v. Cooper, 202 Ala. 420, 80 So. 804. Where the complaint alleged the negligence to be that of defendant's servant, and the proof showed the negligence to be that of one of the defendants, it was treated as a variance under the rule in Carter v. Shugarman, 197 Ala. 577, 73 So. 119; Bains Motor Co. v. Le Croy, 209 Ala. 345, 96 So. 483. The question of the description of the policy of insurance declared upon in Reliance Life Ins. Co. v. Russell, 208 Ala. 559, 94 So. 748; Woodmen v. Maynor, 209 Ala. 443, 96 So. 352; Allen v. Standard Ins. Co., 198 Ala. 522, 73 So. 897; United Brothers, etc., v. Kelly, 199 Ala. 678, 75 So. 312; Wigfield v. Akridge, 207 Ala. 560, 93 So. 612, was a mere variance. The variance as to defect in wheel or the manner of its being fastened upon the axle was presented in Sloss-Sheffield v. Ross; 201 Ala. 160, 77 So. 686. The question of agency—whether that of Austin & Gentry or Austin & Gentry Lumber Company—was treated as a mere variance under the rule in Bowdoin v. Ala. Chem. Co., 201 Ala. 582, 79 So. 4; Bains' Motor Co. v. Le Croy, 209 Ala. 345, 96 So. 483. The variance as to the exact place where Spratling met his death was governed by rule 34 in West v. Spratling, 204 Ala. 479, 86 So. 32. So of the place of the machine in controversy in Stull v. Daniel Mach. Co., 207 Ala. 544, 93 So. 583, or the purpose of the payment—whether for money had and received or on the mortgage debt which was due, in Blackwood v. Rutherford, 212 Ala. 630, 103 So. 689,

or the place of the injury in Stallworth v. Ward, 210 Ala. 595, 98 So. 719, or the property described in Kay & Son v. Ala. Cotton Co., 211 Ala. 454, 100 So. 863, and as to the animal killed in Bradley v. Wood, 207 Ala. 602, 93 So. 534. The variance in the matter of indictment and proof of party from whom the articles were sold or removed contrary to statute was held subject to the rule in Ex parte Shoults, 208 Ala. 598, 94 So. 777. The failure of proof to show that plaintiff bought, etc., but merely the breach of an executory contract to buy or receive the lumber, was held as variance in Oden-Elliott Lbr. Co. v. Daniel-Gaddis Lbr. Co., 210 Ala. 582, 98 So. 730, or proof of venue in Watts v. State, 204 Ala. 372, 86 So. 70.

The cases under circuit court rule 35 and the general charge, where there is immaterial omission in the evidence not involving a substantive right of recovery or defense, are not examined. In Malone Motor Co. v. Green, 213 Ala. 635, 105 So. 897, there was a total failure of proof of the lien for the destruction of which suit was brought. The legal title was responsive to a suit in trover, but not in case for the destruction of a lien that plaintiff had shown did not exist.

The effect of our decisions is that under circuit court rules 34 and 35, when the matter of evidence that is lacking may be supplied without a departure, or when the evidence adduced on the trial is such that the pleading may be amended to conform therewith without a discontinuance or complete change in the form of the action (as was the fact in Malone Co. v. Green, supra), the rule has application as provided for variance. And it follows that a mere variance was presented by the instant evidence and pleading, and the affirmative charges may not, without more, be rested thereon.

The verdict was not contrary to positive instructions given by the court or to the rules of law that govern. Refused charge 11 pretermitted the issues and evidence as to the wrongful acts of other agents than Houppert. It was properly refused. Moreover, its refusal was in accord with the refusal of defendants' charge 33. It was misleading, if not erroneous. The omission of the conjunction "and" between the words "reasonable satisfaction," and the words "such negligence," converted the charge into one for affirmative instruction on the fact theretofore hypothesized, and was properly refused under phases of the evidence indicated. Charge 11 is as follows:

"If any negligence or other wrongful act has been proven by the evidence to your reasonable satisfaction, such negligence or wrongful act was done or omitted by the defendant Joe Houppert while acting within the line and scope of his agency for the defendant St. Louis-San Francisco Railway Company and you would not be authorized to find a verdict against defendant St. Louis-San Francisco Railway Company

in this case without also finding a verdict against the defendant Houppert."

There was error in granting the motion for a new trial.

In the foregoing, BOULDIN, J., concurs.