195 So. 724
### GREAT ATLANTIC & PACIFIC TEA CO. v. TRAYLOR.
6 Div. 508.

Supreme Court of Alabama.
March 7, 1940.

Rehearing Denied April 4, 1940.

Further Rehearing Denied May 9, 1940.

J. L. Drennen, of Birmingham, for appellant.

Taylor & Higgins and Waldrop Windham, all of Birmingham, for appellee.

FOSTER, Justice.

Two propositions are insisted upon by appellant: (1) That appellant is not liable to a person walking along the sidewalk for personal injuries caused by the falling of a sign belonging to a subtenant of a portion of the interior of the storehouse which appellant had rented and was occupying the balance of it, when the sign which fell had with appellant's consent been attached to that of appellant's extending over the sidewalk, and which fell apparently because the frame in which appellant's sign was bound, and to which the subtenant's sign was attached had partially decayed; and (2) that if appellant was liable at all, it results from a breach of duty by the subtenant to maintain his sign in a reasonably safe condition, and that appellant was not liable unless the subtenant was also, and that there was a verdict in this case exonerating the subtenant who was jointly sued with appellant, so that a verdict against this appellant should not be allowed to stand.

The incident occurred April 8, 1938. Appellant owned a lease of the entire premises known as 2319 Second Avenue, North, Birmingham, Alabama, and had subrented for the current year to defendant Joe Joseph an interior space on the west side of ten by one hundred feet for use as a meat market while appellant used the balance of the store space for a grocery business. Joseph paid a stipulated monthly sum as rent and they also agreed as to the expense of electric and water service. There was no financial interest between them in their respective businesses. This space had previously been rented to A. Joseph and N. Resha since 1934 to the beginning of 1938, when it was taken by Joe Joseph. It had been all the time designated as the Empire Market. There was only one entrance to the store, used by both the grocery and market managers and their customers. The market man had no express rights, conferred by the agreement, to control in whole or in part the entrance or the street in front of it. The inside space only was included.

When this arrangement was first made with the market men, appellant agreed for them to attach a sign of theirs advertising the market to the bottom of appellant's sign, which extended across the sidewalk. This was done by the use of three bolts extending through the wooden frame of appellant's sign. Appellant had put up its sign in 1932, and repaired it in 1934, about the time of attaching the market sign. The latter was attached by the market lessee. The two signs were permitted thus to remain without inspection by appellant (as the jury could find from the evidence) until the market sign fell in April 1938. They were in that situation

when the market ownership changed in January 1938, whereby Joe Joseph became its owner and operated under a verbal agreement with appellant until after the accident to appellee.

The evidence justified a finding by the jury that in January 1938, when Joe Joseph took over the market, the wooden frame of appellant's sign was partially decayed, since it was so in April of that year when the market sign fell on account of such decayed condition, as the jury probably found.

As we have stated, the suit was against appellant and Joe Joseph. The complaint is that the defendants so negligently conducted themselves in regard to said sign that it fell on plaintiff and injured him as a proximate consequence of such negligence.

There was a verdict in favor of Joe Joseph and against appellant. A motion for a new trial was made, and overruled, and appellant excepted.

There were various rulings of the court which are affected by the two propositions we have stated, and which appellant has argued in brief.

The result is therefore controlled by them as applied to the facts which we have outlined.

We think both propositions may well be treated by us together, for as here applicable the legal principles are kindred.

When premises are out of repair at the time they are let (or sublet) in particulars which the landlord is bound as regards third persons not then to allow, the landlord is liable for injuries sustained by a third person on account of his failure then to repair, although they are sustained after the premises were let. Morgan v. Sheppard, 156 Ala. 403, 47 So. 147; 36 Corpus Juris 241, section 949; 16 R.C.L. 1076, section 594.

If the dangerous condition existed at the time of the letting (or subletting), especially if the tenant was not bound by agreement with the owner (or lessor) to put the premises in proper condition, the lessor is liable to strangers who suffer injury from such dangerous condition. Dalay v. Savage, 145 Mass. 38, 12 N.E. 841, 1 Am.St.Rep. 429.'

And generally when a landlord relets the premises or a part of them at a time when a dangerous condition there existed, he is liable to one injured during the subsequent term because of this condition, although when the premises were let to the first tenant they did not contain such dangerous condition, but it arose during such prior tenancy. 49 A. L.R. 1419, notes.

And although the reletting is a renewal of a lease to an existing tenant. 16 R.C. L. 1079, section 596.

And although there may have been no negligence by either party existing when their relation began, the jury could find that in reletting to Joe Joseph, it did not surrender all control of the sign and its safety, but that thereafter there may have been a joint and several continuing duty to use due care to see that the condition was reasonably safe for the public. The general duty to keep in repair is coextensive with the control which may have existed under the contract. Woodman v. Shepard, 238 Mass. 196, 130 N.E. 194, 13 A.L.R. 982; Jennings v. Van Schaick, 108 N.Y. 530, 15 N.E. 424, 2 Am.St.Rep. 459.

But when at the time of the letting there was such a defective situation existing as to endanger during the lease the safety of the sign, the duty of the landlord in that connection is primary and not dependent upon that of the tenant in the absence of an agreement to repair by the tenant. 36 Corpus Juris 241, notes 69, 70; Morgan v. Sheppard, supra.

Those principles are not inconsistent with that relied on by appellant that when a tenant or subtenant is given full control of the premises or a portion of them, which at the time of the letting were not in a defective condition, the lessor is not liable to strangers due to the negligence of the lessee, or to defects which arose after the beginning of the lease, or for other acts of negligence of the lessee in respect to conditions over which the lessor has no control at the time. 36 Corpus Juris 239, section 948.

And they are likewise not inconsistent with the further principle that when a defendant is only liable because he is responsible for the act of another, he cannot be held liable if such other is exonerated. Carter v. Franklin, 234 Ala. 116, 173 So. 861; Griffin v. Bozeman, 234 Ala. 136, 173 So. 857; Southern R. Co. v. Lockridge, 222 Ala. 15, 130 So. 557; Walker v. St. Louis & S. F. R. Co., 214

Ala. 492, 108 So. 388; Supreme Lodge v. Gustin, 202 Ala. 246, 80 So. 84 (18).

When these principles are applied to the facts of this case, and the contentions of appellant, it is apparent that the jury could find from the evidence that it did not absolve itself from primary liability to strangers on account of the defect by leasing a portion of the interior of the store to the market owners and in permitting them to suspend their sign to one belonging to it. Appellant did not thereby lose control of that situation and cease to owe the public a duty in that regard.

The fact that it may have been a joint duty merely does not make that of the lessor dependent upon the liability of the tenant. It could be found that it was as much the duty of appellant to strangers to maintain the signs free of dangerous defects as it was that of the tenant to maintain a safe suspension of its own sign.

And assuming that the duty to the public to remedy the defect rested on them both on account of the duty each independently of the other owed to the public, in a suit against them both, an exoneration of one does not in law entitle the other to a discharge from liability. But we would not say if their respective duty was the same to the public, dependent upon the same evidence and legal principles, that the court should permit in the same suit a verdict for one and against the other. This would imply either that the jury did not understand the issues and the evidence, or was actuated by bias or favor. Carter v. Franklin, supra. But that situation does not here exist.

We cannot say that the verdict was so excessive as to require correction by us, when considered in the light of some aspects of the evidence, or that it should have been set aside on any ground assigned.

The rulings of the court were consistent with the principles of law and the application of them to the facts of this case as we have analyzed them.

Affirmed.

GARDNER, BOULDIN, and KNIGHT, JJ., concur.

On Rehearing.

FOSTER, Justice.

The earnestness of the application for rehearing impels us to emphasize what we thought was made clear in our opinion. We fully understand that the complaint charges a joint and several act of negligence to both defendants; and that it is not predicated on those principles which hold the landlord liable to his tenant or to those entering the premises under his right only when such injury results from latent defects known to the landlord and unknown to the tenant and concealed from him. We also fully understand that the facts of this case do not show the latter situation, as it is not in the complaint. The theory on which we wrote the opinion is not at all so predicated.

The case of Morgan v. Sheppard, 156 Ala. 403, 407, 47 So. 147, brings out clearly the distinction in the duty of a landlord to the tenant, his family, employees and customers on the one hand, and to strangers to them both on the other. And so do the authorities generally hold. Liability to the tenant and his privies is on one principle, 36 Corpus Juris 231, et seq., and to strangers on another, 36 Corpus Juris 239, 241, et seq.

The complaint does not contain the allegations, as we have said and as is pointed out in the application for rehearing, that at the time of the letting to Joe Joseph there was a latent defect known to his landlord, but unknown to the tenant, Joe Joseph, and concealed by the landlord from him. The facts do not show that status, and the right to recover against the Great Atlantic and Pacific Tea Company, who was the landlord of Joe Joseph, is not dependent upon it. What we said in the opinion should not be so understood.

It was said in effect that the defect, if it existed at the time of letting to Joe Joseph, was an incident to a duty by the landlord to strangers, and as to which there was no primary duty on Joe Joseph, and his exoneration did not have the effect of acquitting his landlord. This is on the authority of Morgan v. Sheppard, supra, that when the premises are out of repair at the time of letting, in particulars which the landlord is bound *as regards third persons* not to allow, he is liable for injuries sustained by a third person on

that account. That theory of duty is as respects third persons, not the tenant or his privies.

 The Atlantic and Pacific Tea Company may be held liable under this complaint on either of two theories, (1) that in renting to Joe Joseph, it did not surrender all control of the duplex sign, so that thereafter it owed the public a continuing duty (whether or not Joe Joseph also owed such a duty) not to be negligent in its maintenance, and thereby injure some member of the public in the exercise of his lawful rights in the use of the sidewalk. 36 Corpus Juris 243, section 956. This was a non-delegable duty. 36 Corpus Juris 244, note 96. (2) The second theory which would be within the complaint, but not supported by the evidence, is that the landlord surrendered all control of the duplex sign to Joe Joseph in renting to him a portion of the interior of the store, and at the time of doing so, the sign was then in such defective condition as that during the term of the lease it was, or likely would, and did, become dangerous to the public in the ordinary course of events, and he negligently allowed such condition to continue. 36 Corpus Juris 241, section 949.

But if there had been evidence that all control was surrendered to Joe Joseph of the duplex sign in a dangerous condition to the public, and a member of the public was injured by reason of the negligence of the landlord in that respect, it would not be because the landlord was responsible for the negligence of Joe Joseph, but for its own negligence, and, therefore, the exoneration of one would not excuse the other.

A tort charged to have been committed by two persons is several as well as joint, unless the liability of one is because of his responsibility for the act of the other instead of for his own act. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534; Sloss-Sheffield Steel & Iron Co. v. Wilkes, 231 Ala. 511 (21), 165 So. 764, 109 A.L.R. 385; City of Birmingham v. Corr, 229 Ala. 321, 157 So. 56.

This second theory was and is discussed merely as an incident to the first above, and is not here material because there is no evidence of any such surrender of all control of the sign to Joe Joseph.

On the evidence as presented, the jury could find that the Atlantic and Pacific Tea Company continued to owe the public a duty to use due care not to permit the sign to be or become dangerous to it, and negligently failed of that duty. This was within the theory of the complaint.

Application for rehearing overruled.

GARDNER, BOULDIN, and KNIGHT, JJ., concur.

On Application for Further Rehearing.

FOSTER, Justice.

Application for rehearing overruled.

GARDNER, C. J., and THOMAS and BOULDIN, JJ., concur.